(No. 45874.

FORD MOTOR COMPANY Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.*—(William E. Howell,
Appellee.)

*Opinion filed November 30, 1973.*

GOLDENHERSH, J., took no part.

PERZ and McGUIRE, of Chicago (FRANK M. PERZ and JAMES C. SERKLAND, of counsel), for appellant.

COOKE and LEWIS, of Chicago (LEWIS P. GAINES, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under our Rule 302(a) (50 Ill.2d R. 302(a)), by Ford Motor Company, from a judgment of the circuit court of Cook County which affirmed a decision of the Industrial Commission that its employee William Howell had established his claim of permanent disability under the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.8(f)).

An arbitrator of the Commission found that the claimant had sustained accidental injuries arising out of and in the course of employment and entered an award for total temporary compensation, and further

found that claimant's injuries had caused a 10% permanent loss of the use of his right hand. After reviewing the record, examining the claimant's hand and hearing argument, the Commission found a 15% permanent loss of the use of the right hand.

The employer contends that the evidence did not show that the claimant's permanent disability was caused by the accident. The question for us is whether the finding of the Industrial Commission was contrary to the manifest weight of the evidence.

The claimant was assigned to Ford's cushion department, where his job was to attach "pads to springs" with a "hog ring gun." On October 2, 1969, while attaching a pad, the gun jammed. When he attempted to release it, metal chips were thrown from the gun. It appears a chip cut through the canvas glove he was wearing and struck a bone below the little finger of the right hand. The claimant immediately reported the accident to his foreman, who instructed him to report to the medical department. There he was given a tetanus shot and pain pills, and his hand was bandaged. He was also put on light duty. He returned to the medical department several times for treatment.

Dr. Kamensky, a company physician, told the claimant that X rays did not reveal any bone injury but did reveal that at an earlier time he had sustained an injury to his little right finger. When the claimant denied any earlier injury, Dr. Kamensky suggested that he should consult his personal physician. Dr. Joseph Toledo, the private physician, placed his finger in a metal binder for two weeks. The claimant visited Dr. Toledo again on February 3, 1970, after he had developed a lump on the right finger, and had observed that his hand was stiff, sore and pained him after using it. Increased pain in the hand, he testified, caused him to be absent from the job from March 12, 1970, to May 11, 1970. He later left his employment with Ford for reasons not concerned with this litigation.

The witnesses at the hearing were the claimant and Dr. Robert T. Bush, who testified in behalf of the claimant, and Dr. Warren Clohisy, who testified for the employer. A medical report form prepared by Dr. Toledo at the employer's request and medical reports of the Ford Motor Company medical department were also introduced into evidence.

Dr. Toledo, in completing the record form, simply noted that the claimant fractured his right metacarpal area on October 2, 1969, and he responded "yes" to the form's question "Is disability due to his occupation?"

Dr. Bush testified that he first examined the claimant on April 7, 1970. He said that X rays were taken on that date and that they revealed that the claimant suffered a fracture through the right fifth metacarpal with fracture deformity over the metacarpal. He attributed the deformity in part to some bowing of the metacarpal. The witness said that although he could not pinpoint the date of the fracture, the fracture was over two or three months old at the time of the examination and that the fracture was consistent with an injury to the employee's hand on October 2, 1969. He added that the injury did not relate to any childhood injury, as the employer on his cross-examination suggested, because there were no growth centers in the epehysis. He testified that he had examined the claimant again on February 2, 1971, and that his examination revealed that there was a fracture of the right fifth metacarpal with tendinitis and synovitis, stiffness and swelling of the hand, and a swelling of the finger with sensory loss. He said that the condition he described would be permanent.

At the conclusion of the direct examination of Dr. Bush, the parties stipulated: "It is stipulated by and between the parties hereto that if the witness were asked a hypothetical question considering all of the facts involved which came and resulted from the testimony of the petitioner on the same date, that the doctor would be

asked if there was a causal connection between the facts and the evidence in the testimony and the present condition of ill being, that his answer would be, yes to such a hypothetical question."

Dr. Clohisy testified that he conducted one examination of the claimant, which was on February 15, 1971. The examination showed a fusiform thickening, *i.e.*, a widening of the surface over the bone surface of the fifth metacarpal, which caused a lump or protuberance. He said that there was no thickening of the bone itself. He also testified that an X-ray examination showed that there was a "well healed" fracture deformity of the metacarpal. Comparing that X ray to the one taken on October 3 by the Ford Motor Company medical department, he said that both X rays showed an old, healed fracture deformity of the metacarpal which predated the accident by almost a year. He also said that he considered that all of his medical findings and the claimant's condition related to this old injury.

The Ford Company medical department report stated that X rays taken on October 3, 1969, revealed "negative bone injury."

After the award by the arbitrator for temporary total compensation and for compensation based on a 10% permanent and complete loss of use of the right hand, petitions for review were filed with the Industrial Commission by the claimant and the employer. On review the Industrial Commission found that the claimant had suffered a 15% permanent loss of the right hand, and on *certiorari* the circuit court of Cook County affirmed the Commission's decision.

The employer does not here dispute the occurrence of the accident; nor does it deny that the claimant sustained some partial disability. The employer argues that the finding of a causal connection between the claimant's disability and the accident sustained on October 2, 1969, is contrary to the manifest weight of the evidence.

We have made it clear that the resolution of conflicting medical testimony, including that relating to a causal connection, is peculiarly within the province of the Industrial Commission. (*Floyd v. Industrial Com., 47 Ill.2d 193, 196,* and cases therein cited.) The determination of all factual questions is primarily for the Commission, and its findings will not be set aside unless they are contrary to the manifest weight of the evidence. *Cushing v. Industrial Com., 50 Ill.2d 179, 181-182; Lewandowski v. Industrial Com., 44 Ill.2d 204, 206.*

The Commission is not bound by the findings of the arbitrator (*Rodriguez v. Industrial Com., 371 Ill. 590, 594*), and it shall consider all of the evidence presented to it and to the arbitrator in reaching a decision. *Meade v. Industrial Com., 48 Ill.2d 215, 220-221.*

It cannot be said from the record here that the findings that the claimant's permanent disability was caused by the accident were contrary to the manifest weight of the evidence.

The claimant testified that he had been employed by the Ford Motor Co. for almost two years prior to the accident. He denied having had any prior injury to his hand. There is no evidence that the claimant was absent from work for any medical reason before the accident. However, after the accident he made numerous visits to the medical department complaining of pain, cramps and stiffness in his right hand, which complaints he testified caused him to be absent from the job for a period of time immediately after the accident and from March 12, 1970, to May 11, 1970. This evidence was relevant. In *Plano Foundry Co. v. Industrial Com., 356 Ill. 186, 198-9,* this court observed: "Proof of the state of the health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to injury. [Citation.] "

Dr. Toledo reported to the employer that the claim-

ant's right metacarpal area was fractured on October 2, 1969, and the report which was prepared in April 1970—after the development of the disability considered by the Industrial Commission—stated that his disability was, in the language of the employer's form, "due to his occupation." Dr. Bush testified to the fracture of the right metacarpal and said that part of the protrusion was due to angulation of the metacarpal, and that there was a causal connection between the accident and the disability.

In contrast to the testimony of Dr. Bush and the report of Dr. Toledo, Dr. Clohisy testified there was no causal connection between the disability and the accident, but as we remarked in *Precision Connecting Rod Service v. Industrial Com., 40 Ill.2d 277, 281,* a court's concern in reviewing Industrial Commission cases is not to determine medical questions but to pass on the legal question of whether the findings of the Commission are contrary to the manifest weight of the evidence. In this case they are not.

We are not persuaded by the employer's argument that there was no conflicting medical testimony because Dr. Bush did not consider the initial X ray taken on October 3, 1969, about which Dr. Clohisy testified. It cites, *inter alia, Hartwell v. Industrial Com., 51 Ill.2d 562,* saying in effect that where there is testimony by one physician which fails to take into account a pertinent fact in evidence there is no true conflict of medical testimony.

Dr. Clohisy testified that the X ray of October 3, 1969, indicated to him that an old fracture was involved. Though Dr. Bush did not refer to the specific X ray (Dr. Clohisy testified after Dr. Bush had given his testimony), he certainly considered and rejected the possibility that the fracture was an old one. In *Hartwell* medical witnesses failed to consider the undisputed fact that the claimant there had vision prior to his accident. Here, whether the fracture was an old one was the pivotal question, and clearly it was considered by the medical witnesses.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.