(No. 45695.—

AJAX BUFF COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(James M. Simone, Appellee.)

*Opinion filed March 29, 1974.*

Burgeson, Laughlin, Cunningham & Smith, of Chicago (John E. Cunningham and Richard W. Baum, of counsel), for appellant.

Edward J. Barrett, of Chicago, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under our Rule 302(a) (50 Ill.2d R. 302(a)) by the employer-respondent, Ajax Buff Company, from a judgment of the circuit court of Cook County, which affirmed a decision of the Industrial Commission holding that the employee-claimant, James M.

Simone, had established his claim of permanent disability under the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.8(f)).

After an arbitrator of the Commission had denied the claimant's application for compensation, the Industrial Commission, on review, found that as a result of an accidental injury on May 22, 1968, the claimant was wholly and permanently disabled and therefore entitled to compensation as provided by the Workmen's Compensation Act. Ill. Rev. Stat. 1967, ch. 48, par. 138.8(f).

In May, 1968, James Simone had been employed by the respondent for 18 years as a die setter. Three to 15 feet from where his work was performed, a gasoline-powered lift was used to load and unload stock. The lift was operated on an average of 2 to 3 hours a day, 3 or 4 days a week. When the lift was in operation, it emitted strong, blue and black fumes.

There were windows on the south and east walls of the plant. These were close to the ceiling. There were a number of skylights. There were two doors to the plant, one large and the other small. Testimony was conflicting concerning how often the windows were open, and it appears the skylights were never open. One of the doors was usually kept open in good weather. There was an exhaust fan over the front door, but it was infrequently turned on.

On May 22, 1968, the claimant developed a headache and felt dizzy. He also noticed a weakness in one arm and leg. An ambulance was called and the claimant was taken to the hospital, where he was under care for 6 weeks. He now suffers from paralysis in his left leg, arm and shoulder and is unable to walk. It is undisputed that the claimant's disability will be permanent.

Two of the claimant's co-workers testified that visible smoke and fumes were emitted from the lift's exhaust and that they had experienced physical discomfort because of the emissions. Each had complained to the employer about

the fumes, and they testified that the claimant also had complained.

Approximately 3 years prior to May 22, 1968, the claimant began treatment, he testified, with his family physician, Dr. Grant W. Sill, for symptoms of headaches and dizziness. Dr. Sill testified that he had been treating the claimant since 1965 for what he had diagnosed as toxic poisoning. He had not conducted tests in an attempt to confirm the diagnosis, he said, but his examination of the claimant had not disclosed any evidence of elevated blood pressure.

Dr. Rogelio Riera, to whose care Dr. Sill had referred the claimant when he was hospitalized, testified he was of the opinion that the claimant had suffered from a congenital aneurysm in the brain, which caused a cerebral hemorrhage, resulting in permanent damage.

Another witness for the claimant, Dr. Bertram Carnow, specializes in chest and heart diseases. He also specializes in environmental medicine, specifically in occupational diseases in inhalation and diseases generally caused by environmental pollution. Dr. Carnow testified he had examined the claimant in May 1970. His opinion, based on his examination, numerous tests he had administered, and the past medical history of the claimant, was that Simone had suffered a destruction of brain tissue because of a vascular insufficiency or inadequate supply of blood to the area. He did not find, he testified, evidence of arteriosclerosis in an ophthalmoscopic examination. Dr. Carnow's response to a hypothetical question presented by the claimant's attorney was that the carbon monoxide in the air that the claimant breathed at work and the conditions under which he worked had caused a loss of oxygen to the brain and had produced symptoms and consequences of stroke. He also testified that carbon monoxide affects individuals differently and that it would be fair to say that the presence of an arteriovenous shunt,

as the claimant had, would aggravate the effects of the inhalation of carbon monoxide.

Dr. Harold Steinberg, who testified for the respondent, said he had examined the claimant at his home in March of 1969, and was of the opinion the claimant had a significant degree of cerebral arteriosclerosis. However, this conclusion was founded, not on tests made or his examination, but only on the presence of symptoms of stroke. He said he had not conducted any tests for carbon monoxide poisoning because there had been too long an interval since the claimant's exposure to carbon monoxide to permit testing.

The respondent contends here that (1) the finding of the Industrial Commission was against the manifest weight of the evidence; (2) the claimant failed to trace his injury to a definite time, place and cause, and recovery should have been denied; (3) the claimant did not prove his employment was a causative factor in his injury or that it aggravated or accelerated a pre-existing condition.

Considering the respondent's first and third contentions together we must hold them unsupportable. Dr. Sill testified that he had been treating the claimant since 1965 for toxic poisoning. Dr. Carnow's testimony was that he had not found evidence of arteriosclerosis and that his opinion was that the carbon monoxide to which the claimant had been exposed at work had caused a loss of oxygen to the brain and had produced symptoms and consequences of stroke. The medical witness for the respondent, Dr. Steinberg, gave testimony that was conflicting to the extent that Dr. Steinberg testified that he believed the claimant suffered from arteriosclerosis, but without more we will not prefer the testimony of one medical witness to another. This court has said that where medical testimony is in dispute and findings of the Commission are not contrary to the manifest weight of the evidence, the decision of the Commission will not be

disturbed. (*Pesovic v. Industrial Com.*, 33 Ill.2d 519.) It is also clear that "The Industrial Commission determines the facts. It is within its sphere to draw reasonable inferences and conclusions from competent evidence, both direct and circumstantial. *** This court will not weigh conflicting evidence and substitute its judgment for that of the commission." (*Fluor Corp. v. Industrial Com.*, 398 Ill. 616, 622-623.) Our function is to determine whether the finding of the Commission is against the manifest weight of the evidence. In *Fluor Corp.* the court went on to say "this court will not discard permissible inferences drawn by the commission merely because it might have drawn other inferences from such facts." Considering the above-referred-to testimony of claimant's medical witnesses, it cannot be said that the finding of the Commission was contrary to the manifest weight of the evidence.

We must reject also the respondent's contention that the Commission should have denied compensation because the claimant failed to trace his injury to a specific time, place and cause. We have already referred to the testimony of Dr. Carnow, which was that the claimant's accident was caused by a loss of oxygen to the brain due to the carbon monoxide to which the claimant was exposed at work. That the condition itself may have developed over a period of time would not prevent the claimant from recovering under the Workmen's Compensation Act. Larson, in his Law of Workmen's Compensation (sec. 39.10), notes that most jurisdictions have awarded compensation for conditions which developed, not instantaneously, but gradually over periods of time ranging from a few hours to several decades. Illinois has been among those jurisdictions. In *Matthiessen & Hegeler Zink Co. v. Industrial Com.*, 284 Ill. 378, the claimant under the Workmen's Compensation Act had been employed for 15 years as a fireman removing waste from molten zinc that contained arsenic and gave off fumes or gases. This court upheld an award for accidental injury upon his death, following a few days illness in which

he displayed symptoms of arsenical poisoning. This court in *Quaker Oats v. Industrial Com.*, 414 Ill. 326, upheld an award in favor of a machine operator whose leg required amputation. Without knowing it the employee had suffered from Buerger's disease and his condition had been aggravated by the falling, from time to time, of cans on his foot from the machine he operated. Too, in *Laclede Steel Co. v. Industrial Com.*, 6 Ill.2d 296, 300-301 (after citing the definition of an accident under the Act from *Matthiessen & Hegeler Zinc Co.*), it was observed: "Moreover, there need be no external violence to the body to constitute an accidental injury, and compensation may be allowed where a workmen's existing physical structure, whatever it may be, gives way under the stress of his usual labor. (*Baggot Co. v. Industrial Com.*, 290 Ill. 530; *Town of Cicero v. Industrial Com.*, 404 Ill. 487; *Marsh v. Industrial Com.*, 386 Ill. 11; *Carson-Payson Co. v. Industrial Com.*, 340 Ill. 632.) Contrary to defendant's contention, there need be no showing of unusual strain or activity beyond the habitual job requirements in such cases in order to establish an accidental injury. [Citations.] "

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*