(No. 46254.— )

TILMAN NEWGARD, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Chrysler Corporation, Appellant.)

*Opinion filed September 27, 1974.*

GOLDENHERSH, J., took no part.

Williams, McCarthy, Kinley, Rudy & Picha, of Rockford (George J. Picha, of counsel), for appellant.

Tuite, Morrissey, Gesmer & Finnegan, of Rockford (Jason N. Gesmer and Gerald F. Tuite, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Tilman Newgard, sought workmen's compensation for an injury purportedly sustained while he was working at Chrysler Corporation on September 6, 1969. The arbitrator entered an award for complete disability, finding that claimant was wholly and permanently incap-

able of work. After additional evidence was presented on review before the Industrial Commission, the arbitrator's award was set aside because claimant had failed to prove that he sustained accidental injuries arising out of and in the course of his employment. On *certiorari* to the circuit court of Winnebago County, the Industrial Commission's decision was reversed and the arbitrator's award reinstated. Chrysler appeals contending that the Industrial Commission's determination was not contrary to the manifest weight of the evidence and that the circuit court erred in its evidentiary evaluation. 50 Ill.2d R. 302(a).

At the hearing before the arbitrator conducted on May 15, 1972, claimant testified that he commenced his employment at Chrysler in June, 1969. He had previously worked for a chemical company as a janitor. In November, 1968, he was shaking a mat at the chemical company when he experienced a pain in his back about four inches above the belt line. He consulted Dr. Donald Lyddon, who administered a series of heat treatments and placed him in traction. Claimant did not see Dr. Lyddon for several months prior to the alleged accident at Chrysler.

Claimant further testified that on September 6, 1969, he was working at Chrysler with a co-employee whom he only knew as "Ted" when they were instructed by the foreman, Stuart Cole, to remove a large barrel containing rags, sawdust and grease from a pit area. They asked Cole if they could use a "mule" (mechanical device) to aid them, but Cole said there was no time because the assembly line was about to start. Claimant and the co-employee began to lift the barrel weighing several hundred pounds when claimant said he felt a "snap" in his back near his belt line. Claimant did not tell anyone about this before he left work that day. Two days later claimant visited Dr. Lyddon, who gave him electric and heat treatments and then took X rays several days thereafter. During this period he continued to work scraping grease from the floor and laying tar paper.

On September 12, 1969, claimant said that he and James Rice, the union steward, talked to Cole about the incident. Claimant informed the latter that he would be hospitalized for spinal tests and in response to claimant's inquiry Cole told him that Chrysler's medical insurance policy would pay for this. James Rice testified that he had talked to Cole, informed him of the purported accident and asked Cole to issue a pass permitting claimant to see the company nurse. Claimant did see the nurse on September 17 but complained only of a buzzing noise in his ears due to factory noise. He did not mention his back condition to the nurse, who suggested that he obtain a set of earplugs.

Claimant entered the hospital on September 19. He admitted that on this occasion he instructed the hospital to send the bills to the chemical company's compensation insurer. A myelogram was taken and it indicated the possibility of a ruptured intervertebral disc. Thereafter Dr. Lyddon performed a laminectomy in the L—4, L—5 lumbar region. In December, 1969, claimant underwent a spinal fusion which failed, and in June, 1970, a transverse process fusion was performed. Hospital records admitted into evidence pertaining to these procedures contained claimant's medical history, but they do not make reference to the accident at Chrysler. These records, however, do indicate that claimant had suffered from intermittent low back pain since his injury at the chemical company. The report compiled on the date of claimant's initial hospital admission indicates that the "present episode" of back pain began about two weeks prior to September 19, 1969. Despite these operations claimant presently experienced pain, and he had not worked since September, 1969. He had last visited Dr. Lyddon on May 12, 1972, and at that time he said that he reiterated his complaint concerning his injury at Chrysler.

While claimant was recovering from his first operation, he instructed his wife to fill out an application for sickness

and accident insurance benefits in which he ascribed his injury to the lifting of the barrel. The form was then given to Dr. Lyddon for his completion. Upon his release from the hospital, claimant and his wife went to see Jerald Halpin, who at that time was Chrysler's insurance and workmen's compensation supervisor. Claimant said that he entered Halpin's office and a discussion ensued at which time Halpin told claimant that if he did not sign a form stating that he was injured prior to his employment at Chrysler, then claimant would have to pay all the medical bills. Claimant called his wife into the office and explained the situation to her and then he signed a blank form. His wife corroborated much of this testimony.

The form that was signed by claimant was written by Halpin and described Dr. Lyddon's recent medical treatment. It further contained the admission that claimant had not been injured at Chrysler and that he had not reported an injury to any supervisory personnel.

Dr. Samuel Rupert was called by claimant. In response to a hypothetical question Dr. Rupert stated that a causal relationship could exist between the accident on September 6, 1969, and a condition such as claimant's because the incident could have aggravated a prior condition. He was of the further opinion that the condition was permanent.

Jerald Halpin testified that he requested claimant to come to his office on October 15, 1969, to explain a discrepancy on the application for sickness and accident benefits in which claimant indicated that his condition was due to a work-related injury at Chrysler. The reverse side of the form, which was to be filled out by the attending physician and which bore Dr. Lyddon's signature, referred only to the incident at the chemical company as the source of claimant's injury. Halpin also showed claimant his medical chart that referred to his visit to the company nurse on September 17 and his failure to report the back injury. Halpin testified that claimant then admitted that he had not been injured at Chrysler and that he had

submitted a false report because he feared that he would not be covered by insurance. At this point Halpin assured claimant that he was covered under a group plan even for injuries sustained at another job. Claimant then told Halpin he would give him a statement in which he preferred that no reference be made to the chemical company and in which he would disclaim knowledge of the cause of his injury. Halpin wrote the statement and, after reading it, claimant signed it. It may be inferred from Halpin's testimony that claimant's wife was not present.

On review before the Industrial Commission Dr. Donald Lyddon, an orthopedic surgeon engaged in private practice, was subpoenaed to testify by Chrysler. He generally described the course of treatment claimant had received for the injury sustained at the chemical company. He related that he did not see claimant from April 21, 1969, until September 8, 1969. At the latter occasion claimant complained that he had intermittent back pain, but he gave no indication as to the reason for this pain. Daily traction was prescribed, but when it proved unsuccessful claimant was instructed to enter the hospital. Dr. Lyddon testified that claimant had merely told him that the "episode" of pain just "came on" and that he had not been informed by claimant of the possibility that his case involved a work-related injury at Chrysler even when claimant was questioned for the purposes of obtaining a medical history before each operation. Dr. Lyddon said that it was not until May 12, 1972, three days before the arbitration hearing, that claimant mentioned the incident at Chrysler.

The method utilized in taking a patient's medical history was described. Dr. Lyddon testified that prior to claimant's first operation he spent 15 to 30 minutes taking notes and that a new history was compiled each time claimant was admitted to the hospital. He also explained his office procedure that included a routine compilation of a report if a new injury or new employer was involved in

order to notify the employer or insurance company that workmen's compensation might be involved. This procedure had been utilized in relation to claimant's chemical company injury. Claimant's medical file contained no report relating to another accident.

Dr. Lyddon further explained that claimant's ruptured disc was caused by a degenerative process that might occur over a period of months or even longer and need not be preceded by trauma. He conceded that an injury could aggravate a pre-existing condition although the aggravation could occur anywhere.

O. W. Phelps, Chrysler's insurance representative, confirmed Halpin's testimony that the medical insurance plan required by union contract would have provided coverage to employees who were injured in prior employment situations.

Claimant testified before the Commission and said that he did tell Dr. Lyddon of the injury at Chrysler before his first operation during their brief five-minute conversation. He also said that he had not obtained any work and he still experienced pain even when he attempted to do less strenuous work in his house.

A claimant bears the burden of establishing that his condition for which he seeks compensation arose out of and in the course of his employment. (*Brown v. Industrial Com.*, 57 Ill.2d 313, 316; *Wise v. Industrial Com.*, 54 Ill.2d 138, 142.) Questions pertaining to the factual determination of a causal relationship between the injury and employment and to witness's credibility are primarily within the purview of the Industrial Commission. (*Village of Streamwood Police Department v. Industrial Com.*, 57 Ill.2d 345, 350; *Excelsior Leather Washer Co. v. Industrial Com.*, 54 Ill.2d 318, 326; *Brown v. Industrial Com.*, 51 Ill.2d 291, 295.) While it has been recognized that the findings of the arbitrator are not without legal effect (*Quick v. Industrial Com.*, 53 Ill.2d 46, 50), it is within the province of the Industrial Commission to resolve disputed

questions of fact and to draw reasonable inferences therefrom (*Ajax Buff Co. v. Industrial Com.*, 56 Ill.2d 575, 580). A court is limited to the consideration of whether said determinations are contrary to the manifest weight of the evidence. *David Wexler and Co. v. Industrial Com.*, 52 Ill.2d 506, 508-09.

Claimant has implied that as a matter of law the Industrial Commission erred in setting aside the arbitrator's award and the circuit court properly reversed. Although a question of law is presented when there is no dispute as to factual matters and no conflicting inferences may be drawn therefrom (*Union Starch v. Industrial Com.*, 56 Ill.2d 272, 275; see also *Mastercraft Co. v. Industrial Com.*, 58 Ill.2d 155; *Material Service Corp. v. Industrial Com.*, 53 Ill.2d 429, 436), examination of the present record negates any support for this argument.

Claimant has candidly admitted that his conduct has been inconsistent, but he maintains that this behavior resulted from external pressure applied by Chrysler supervisory personnel. He attempts to contrast his lack of formal education with the experience of Halpin as an insurance supervisor in an attempt to explain the reason he signed a statement absolving Chrysler of liability because he feared he would lose his job and have to assume the medical expenses.

Essentially this case is resolved upon the credibility of the witnesses. It is uncontradicted that claimant did not report the condition of his back to a company nurse two days before he entered the hospital. Claimant testified that when he was admitted to the hospital he informed it to send the bills to the insurer of the chemical company where undisputedly he had previously sustained a back injury. This request occurred one month prior to his meeting with Halpin and after he had even been allegedly told by his foreman that Chrysler's insurance would cover the matter. The recollection of the events that transpired in Halpin's office when claimant signed the disputed form

are thoroughly conflicting. However, it should be noted that the record contains a legitimate basis for Halpin's concern about the cause of claimant's condition because of the significant variation between claimant's version of the "accident" and that submitted by Dr. Lyddon in the application form for sickness benefits. This would obviously justify Halpin's further investigation of the matter. The fact that the statement was written by Halpin is explained by claimant's own admission that he could not write very well. Dr. Lyddon maintained that he had not been informed by claimant of the accident at Chrysler until May 12, 1972, several days before the arbitration hearing and about 20 months after the supposed "accident," although claimant has disputed this. After consideration of the record, we cannot say that the decision of the Industrial Commission finding that claimant's condition did not arise out of and in the course of his employment with Chrysler was contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Winnebago County is reversed.

*Judgment reversed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.