(No. 46575.—

PONTIAC CHAIR COMPANY, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.*—(Marin E. Miller, Appellee.)

*Opinion filed November 27, 1974.*

Bayler & Noetzel, and Walter L. Stodd, both of Pontiac, for appellant.

Smith & Loy, of Pontiac, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Marian E. Miller, sought workmen's compensation for the fatal heart attack of her husband, LeRoy B. Miller, purportedly sustained from his work at Pontiac Chair Co (hereinafter Pontiac). From the evidence adduced at a hearing the arbitrator found that the claimant failed to prove that her husband sustained accidental injuries arising out of and in the course of his employment. After additional evidence was presented on review before the Industrial Commission, the arbitrator's decision was sustained. On *certiorari* to the circuit court of Livingston County, the decision of the Industrial Commission was set aside and it was directed to determine and award compensation. The Commission entered an award for compensation and the circuit court confirmed. Pontiac appeals, contending that the Industrial Commission's determination was not contrary to the manifest weight of the evidence, and that the circuit court erred in its evidentiary evaluation. 50 Ill.2d R. 302(a).

At the hearing before the arbitrator claimant testified that her husband had worked for Pontiac since May 1, 1968. Miller had previously worked for Sears, Roebuck and Co., but his employment had to be terminated following his heart attack in February, 1968, because he was no longer capable of doing the heavy lifting which the job required. On December 24, 1968, Miller worked only a half day at Pontiac, starting work at 7 a.m. and leaving at noon. Claimant saw her husband that day walking from the plant which was located only one-half block from their home. She testified that he walked very slowly and looked extremely pale. When he reached the house, he went into the kitchen where he poured himself a cup of coffee. Within a minute or so he rushed to the bathroom and began vomiting while clutching at his chest. He then took some pills, one of which was nitroglycerin. Claimant called the doctor while her husband went into the living room to lie on the davenport. While awaiting the arrival of the physician, he again rushed to the bathroom and began

vomiting. Claimant heard him fall and found him lying against the bathroom door. Dr. Richardson arrived shortly before 12:30 p.m. and pronounced Miller dead as a result of a massive heart attack. The death certificate stated that the immediate cause of death was due to a myocardial infarction as a consequence of arterial sclerotic heart disease.

The plant manager at Pontiac and the foreman of the division in which Miller was employed testified as to the work Miller did prior to his death. Miller worked at a bench as a crossarm assembler. He would lift 12-24 sticks of wood, weighing approximately 18-20 pounds, and place them on his bench. He would take two sticks at a time, fit them together end to end and glue them. A cleat was fitted over the joint, and Miller would lift a six-pound power nailer to drive three staples into the cleat. He would then position four T-nuts and place the assembled piece, now called a crossarm, on a stationary air-press machine to fasten the nuts. The finished crossarm, weighing approximately three pounds, would be stacked at the end of the bench and later loaded on push carts for delivery to the finishing operation. Miller worked at a speed a little above average, finishing about 100 crossarms per hour. During the five hours he worked on the day of his death, Miller assembled 550 crossarms, 110% of his normal rate. On some previous work days, however, he had assembled 900 during his eight-hour day, or over 112% of his normal rate.

Dr. Richardson testified that he had treated Miller in February, 1968, for a heart attack. He explained that Miller experienced an acute episode of angina pectoris with articular fibrillation, a failure of the heart to maintain normal rate and rhythm. The doctor prescribed a treatment of various drugs, rest, and graduated progressive exercises to return Miller to normal life. From the time of this treatment Miller's condition was improving and his medication was gradually reduced.

Dr. Richardson knew Miller worked at Pontiac but

was informed by Miller that the job consisted of making minor repairs on chairs and that the work could be done at Miller's "own time." There was no lifting involved in this original job and it was work compatible with Miller's condition. The doctor stated that he had no knowledge that Miller was working as a crossarm assembler and he would not have approved of it had he known. He testified that the lifting and the arm movements necessary for the job could have done further damage to Miller's heart, and that the work might, or could have precipitated a heart attack.

On cross-examination Dr. Richardson testified that during Miller's treatment for the February, 1968, heart attack, he concluded that Miller had arterial sclerotic heart disease. This is a progressive disease which can cause death whether or not there is any exertion at the particular time of death. While death may result at a particular moment depending upon the exertion on the heart, the disease is such that eventually a point is reached where death is going to ensue. The doctor admitted that Miller might have died as he did whether he had worked that day or not. He stated on re-direct examination that in his opinion had Miller not been employed, but rather had nothing but rest he would have lived longer.

On review before the Industrial Commission, Pontiac called as a witness Dr. George M. Parker, a specialist in internal medicine including the diagnosis and treatment of heart conditions. He testified solely to a hypothetical question consisting basically of the facts relating to Miller's medical condition and the activities required in performing his job. Dr. Parker was of the opinion that death was a result of a further episode in the progression of the arterial sclerotic heart disease which occurred internally within the body and had no causal connection with the work. After considering the particular level of work done on the day of his death and the fact that Miller had previously tolerated it, the doctor stated on cross-examination that Miller's

work had nothing to do with bringing on the fatal heart attack. Dr. Parker did admit that higher levels of work would produce greater strain on the heart of the person working. His testimony, however, distinguished heart failure, which is the heart "not doing its work," from a myocardial infarction, which is "caused by a change in an artery that brings on significant sickness of the heart muscle." He stated that extreme excess of work can bring on heart failure but not heart disease.

Based upon consideration of the record and the additional evidence presented on review, the Industrial Commission affirmed the decision of the arbitrator. The circuit court on *certiorari,* however, set aside the Commission's decision as against the manifest weight of the evidence. The court based its decision on what it referred to as "a basic knowledge of what is implied by the terms 'arteriosclerosis' and 'myocardial infarction' common to every reasonably informed person." Under this heading the court spent 7 paragraphs of its 21-paragraph decision discussing the heart and its related problems. The circuit court concluded that the premise of Dr. Parker's testimony did not support his conclusion. In summary the court said that since arteriosclerosis is a progressive condition it follows that the amount of stress that can be tolerated declines as the degree of arteriosclerosis increases, and therefore, it is impossible to conclude that a degree of stress previously tolerated could not have been the cause of a subsequent heart attack. Consequently, the circuit court determined that Dr. Parker's conclusion that the fatal heart attack could not have been caused by the work which Miller had performed because he had previously tolerated an equal workload was not supported. That court held that the evidence introduced by the claimant appeared ample to sustain her claim that Miller's death arose out of and in the course of his employment and that the testimony to the contrary carried no conviction.

The claimant bears the burden of establishing that the

death for which she seeks compensation arose out of and in the course of employment. (*Brown v. Industrial Com.,* 57 Ill.2d 313, 316.) The determination of factual questions, including the resolution of conflicting medical testimony relating to the causal connection between an accidental injury and death, is primarily within the purview of the Industrial Commission. (*Ford Motor Co. v. Industrial Com.,* 55 Ill.2d 549, 554; *Floyd v. Industrial Com.,* 47 Ill. 2d 193, 196.) A court is limited to the considerations of whether said determinations are contrary to the manifest weight of the evidence. (*Newgard v. Industrial Com.,* 58 Ill.2d 164, 170; *David Wexler and Co. v. Industrial Com.,* 52 Ill.2d 506, 508-509.) On *certiorari* the circuit court considers a case on the record alone and has no authority to consider evidence not presented therein. *Brown v. Industrial Com.,* 51 Ill.2d 291, 293; *Zimmerman v. Industrial Com.,* 50 Ill.2d 346, 350.

In reviewing the Industrial Commission's decision, the circuit court considered medical factors not contained in the record, and we cannot accept that court's contention that these facts were "basic knowledge *** common to every reasonably informed person." We conclude that the circuit court improperly substituted its judgment for that of the Industrial Commission. That court discarded the testimony of Dr. Parker because it chose an inference that Miller's heart disease was so far progressed that the exertion required for only his usual activities was enough to bring on the heart attack. Another permissible inference, and the one apparently adopted by the Commission, was that the disease progressed so far that any type of exertion was overexertion with no causal connection to Miller's work. See *City of Chicago v. Industrial Com.,* 45 Ill.2d 350, 352.

Dr. Richardson was of the opinion that Miller's work might or could have precipitated his heart attack. Dr. Parker was of the opinion that there was no causal connection. The resolution of this conflicting testimony

was for the Industrial Commission to determine. Dr. Richardson also testified that arterial sclerotic heart disease is a progressive disease and such that a person suffering from it might die in his sleep. After a consideration of the record, we cannot say that the decision of the Industrial Commission was contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Livingston County is reversed.

*Judgment reversed.*