(No. 47178

CHICAGO TRANSIT AUTHORITY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(William H. Keough, Appellee.)

*Opinion filed June 2, 1975.*

Frederic O. Floberg (Ross, Hardies, O'Keefe, Babcock & Parsons, and Francis J. Mullen, General Attorney, Chicago Transit Authority, of counsel), of Chicago, fo; appellant.

Murges and Johnson, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, William H. Keough, sought workmen's compensation for injuries purportedly arising out of and in the course of his employment with the Chicago Transit Authority (C.T.A.) on August 5, 1971. The arbitrator

found that claimant had sustained injuries which completely disabled him and rendered him wholly and permanently incapable of work. Claimant was therefore granted an award which included a pension for life. (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(f).) The Industrial Commission sustained the award, and on *certiorari* to the circuit court of Cook County the Commission's decision was confirmed with the exception that a portion of the award was reduced which related to claimant's reimbursement for medical expenses. The C.T.A. appeals to this court (50 Ill.2d. R. 302(a)) contesting the evidentiary sufficiency of the Commission's determinations that the injuries arose out of and in the course of claimant's employment and the nature and extent of those injuries.

Claimant was 62 years old at the time of the accident. He had worked for the C.T.A. for 35 years and was assigned as a supervisor at Post 24, which was located at Archer and Cicero avenues in Chicago. His duties were to maintain bus schedules, and his functions included the rerouting of buses if delays developed in his assigned area. Post 24 consisted of a "shanty" which contained a telephone enabling the supervisor to report any necessary information. All written reports compiled by claimant were left at this location and were picked up by another supervisor who drove about the area in a car.

On the date of the injury claimant worked a "split shift" from 6:25 a.m. to 9:30 a.m. and from 2 p.m. to 6:30 p.m. He completed his morning shift and traveled to the C.T.A. garage at Archer and Rockwell, about 4 miles from Post 24. There the C.T.A. maintained a "train room" where its employees could eat and read. Toilet facilities were also provided.

Claimant testified that near the end of his work shift on the evening of the accident a traffic delay developed due to a railroad train which blocked the bus route two blocks east of claimant's station. Claimant said that he remained about 20 minutes beyond the scheduled termina-

tion of his duties in order to reroute buses around the obstruction. Evidence was introduced by the C.T.A. which tended to refute claimant's representation concerning the delay that evening. However, recitation of these facts is unnecessary for in its briefs and during oral argument the C.T.A. has advanced the theory that at the time of the accident claimant had terminated his employment that day and the "case went off in a tangent on the question of reroutes."

Claimant asserted that because of this delay he realized that he would be unable to reach the commuter train that he normally would take to his home in the evening. Therefore, after leaving Post 24, he boarded a bus and rode to a "carry out" restaurant where he purchased a dinner. He intended to eat at the "train room" that evening as he had previously done in similar situations and then take a later commuter train. Claimant's counsel has informed this court during oral argument that claimant would board the train in downtown Chicago, some distance from the C.T.A. garage.

Claimant arrived at the C.T.A. garage and entered the premises. When he walked in front of a wash bay, a bus was driven from this area by a C.T.A. employee and struck claimant. The accident occurred between 6:55 p.m. and 7:05 p.m., according to C.T.A. and hospital admission records.

Claimant was hospitalized for 44 days with a broken left arm and right leg. Multiple contusions resulted from the accident and claimant also complained of difficulty with his vision. Surgery was performed, and hospital records indicated that a "carpenter type screw" was inserted in the left elbow. Claimant has not worked since the accident. He testified before the arbitrator that he had difficulty turning his left arm and experienced pain in his left elbow. He also claimed that his leg gave out at times and that he walked with the assistance of a cane. Finally, he complained of present difficulty with his

vision.

A medical report compiled in September 1972 was introduced by claimant. It indicated that he limped and that there was muscular atrophy in the left biceps. Pronation and supination were limited. This physician, who made the report, observed "marked spasticity" of the lumbar muscle groups and body restriction of the "lumbar level" in all directions. Straight leg raisings were also restricted as were movements at the hip and knee.

About this time another physician apparently retained by the C.T.A. examined claimant. In his report he concluded that claimant had made a "very good recovery and could be engaged in suitable employment." He also observed the claimant's use of the cane for walking was unnecessary.

In May 1973 claimant was again examined by a physician at the request of the C.T.A. This physician's diagnosis indicated a "healed fracture of the left olecranon with considerable restriction of motion" and "considerable osteoarthritis of the right knee." The physician observed that improvement would occur if the screw was removed from the elbow and the "overlying bursa resected." After discussing the matter with counsel for the C.T.A. this physician later concluded that there was no reason "why this man [claimant] should not have been able to carry on his work for a substantial period of time prior to my examination."

The C.T.A. maintains that claimant's work had terminated for the day when he left Post 24 at Archer and Cicero avenues, thereby permitting him to travel anywhere he wanted. It also argues that there was no explanation for his appearance at the C.T.A. garage 4 miles distant from Post 24 on the evening of the accident that was reasonably related to his employment activities or incidental thereto. Thus the C.T.A. concludes that claimant's injuries are not compensable under the Workmen's Compensation Act for they did not arise out of and in the course of his

employment and that the Industrial Commission's contrary determination was erroneous.

The C.T.A. initially suggests, in support of its position, that the record in this case presents only a question of law in relation to the issue of whether the injuries arose out of and in the course of employment because there is agreement to the relevant facts or they are uncontradicted. We must reject this contention. It is only where no factual matters are disputed or conflicting inferences capable of being drawn therefrom that a question of law is presented. (*Newgard v. Industrial Com.*, 58 Ill.2d 164, 170, and cases therein cited.) The record herein permits the conclusion that conflicting inferences do exist. See *Morgan Cab Co. v. Industrial Com.*, 60 Ill.2d 92, 97.

In order to sustain an award for workmen's compensation an injury must arise out of and in the course of employment. (*Technical Tape Corp. v. Industrial Com.*, 58 Ill.2d 226, 230.) This determination involves a factual evaluation by the Industrial Commission which will not be set aside on appeal unless contrary to the manifest weight of the evidence. *Wise v. Industrial Com.*, 54 Ill.2d 138, 142.

While the injury must have occurred during some undertaking related to employment (*Aaron v. Industrial Com.*, 59 Ill.2d 267, 269), we have stated that "an injury accidentally received by an employee on the premises of his employer while going to or from his place of employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of his employment." *M & M Parking Co. v. Industrial Com.*, 55 Ill.2d 252, 257.

There are no questions that the accident occurred on the premises of the C.T.A. and that the injury was sustained within a reasonable period after claimant had terminated his duties for the day. (See *Hiram Walker & Sons v. Industrial Com.*, 41 Ill.2d 429.) Moreover, the risk of being injured in the manner described in this case is

certainly related to claimant's employment and is not shared by the general public. *Union Starch v. Industrial Com.*, 56 Ill.2d 272, 276.

The C.T.A. places much stress upon the fact that at the time claimant left Post 24 he had completed his duties for that day and there was no need for his travel to the garage at Archer and Rockwell. The fact remains that the "train room" maintained by the C.T.A. at this location was for the convenience and comfort of the C.T.A. employees. There is no basis in this record from which we might properly conclude that use of the "train room" was solely limited to those employees presently on duty. Claimant's testimony that he had utilized this facility under similar circumstances on prior occasions supports this determination.

Claimant's assignment required that he work away from C.T.A. property with only access to a "shanty." As a result of the "split shift," his work day effectively spanned an excess of 12 hours. Being unable to reach his normal mode of transportation to his home on the evening of the accident, claimant elected to return to the C.T.A. garage to await departure of the next commuter train. If claimant had been injured at the completion of the morning portion of his shift and an award was granted by the Industrial Commission pursuant thereto, we would have no hesitancy in sustaining the decision. And due to the peculiar nature of claimant's duties we are of the opinion that the factual framework presented in this case does not significantly differ. The facts are analogous to those cases which have allowed recovery for injuries sustained on an employer's premises shortly before or after work. The Industrial Commission is primarily responsible for resolution of the matter, and we cannot say that its decision was contrary to the manifest weight of the evidence.

The C.T.A. further complains that the Industrial Commission's decision finding claimant totally and permanently disabled was in error. The factual determination of

the Industrial Commission as to the extent of disability will not be set aside unless contrary to the manifest weight of the evidence. (*Interlake Steel Corp. v Industrial Com.*, 60 Ill.2d 255, 260; *Board of Trustees of the University of Illinois v. Industrial Com.*, 55 Ill.2d 293, 300; *Scandroli Construction Co. v. Industrial Com.*, 54 Ill.2d 395, 400.) It is for the Industrial Commission to draw reasonable inferences from the evidence, and its resolution in this regard will not be overturned merely because a court may have drawn opposite inferences. (*City of Chicago v. Industrial Com.*, 60 Ill.2d 283, 286.) Consideration of the various medical reports and claimant's testimony relating to his disabilities indicate that the evidence is conflicting and gives rise to reasonable inferences in support of the differing positions. Under such circumstances the Commission's determination will not be set aside. See *City of Chicago v. Industrial Com.*, 59 Ill.2d 284, 288.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*