(No. 48105.-

PEAVEY COMPANY FLOUR MILLS, Appellant, v. THE
INDUSTRIAL COMMISSION *et al.*—(John N. Schef-
fel, Jr., Appellee.)

*Opinion filed October 1, 1976.*

Keefe and De Pauli, of East St. Louis, for appellant.

Pratt, Kardis, Pierce & Bradford, Ltd., of East Alton, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, John N. Scheffel, Jr., sought workmen's compensation for injuries he sustained while employed as a flour loader for Peavey Company Flour Mills (hereinafter Peavey). At a hearing before an arbitrator the parties stipulated that the injuries suffered arose out of and in the course of employment, and that the only issue in dispute was the nature and extent of the injuries. From the evidence adduced, the arbitrator found that claimant had sustained accidental injuries causing his temporary total incapacity to work for a period of approximately 15 weeks, and a permanent and complete loss of use of the right leg to the extent of 25% thereof. An award of compensation was made. On review before the Industrial Commission, the arbitrator's decision was affirmed. On *certiorari* to the circuit court of Madison County, the decision of the Industrial Commission was confirmed. The employer appeals (Ill. Rev. Stat. 1975, ch. 110A, par. 302(a)), contending that the portion of the award giving 25% permanent and complete loss of use of the right leg was against the manifest weight of evidence.

At a hearing before the arbitrator on November 21, 1974, claimant was the only party to testify. He stated that on June 5, 1972, he worked as a flour loader for

Peavey. His duties consisted of catching 100-pound bags of flour on his shoulder as they came down a conveyer belt and stacking them in a box car. As he caught a bag of flour on his right shoulder and turned to put it down, he experienced a severe pain in his lower back. He could not continue working and immediately reported the incident to his supervisor. He was sent, by Peavey, to a chiropractor, and after a week of treatment, the chiropractor suggested that he go back to work, although he was using two canes to ambulate. On his return to work, claimant was sent to a second chiropractor, Dr. W. C. Spillman, for treatment. Dr. Spillman treated the claimant for approximately 60 days, and prescribed nightly traction for his back and the wearing of a corset during working hours. The claimant subsequently returned to work in late September or early October 1972. He continued to see Dr. Spillman periodically for approximately 2 months. His duties at work remained the same and he received the same wages. The last time the claimant saw a doctor was March 28, 1973, when he was examined by Dr. Arnot. He stated that he continued to experience lower back pains and slept in traction every night. On cross-examination, claimant admitted suffering three prior back injuries since June 1970, which all occurred in the same general area as the present injury.

The arbitrator observed the claimant wearing the brace and manipulated his back in both lower extremities. He discussed in detail with the claimant the problems the latter experienced in connection with the pain and disability in his back, and the arbitrator noted that the claimant's complaint was limited to the "back area and out into the buttocks on both sides."

Following the claimant's testimony, two medical reports were introduced into evidence without objection. The first report, from Dr. Spillman, was proffered by the claimant, while the second report, from Dr. Arnot, was introduced as a joint exhibit. Dr. Spillman's report related

the following diagnosis: lumbosacral and right sacroiliac strain with marked right ilioposoas muscular spasm; secondary upper right sciatic neuralgia; lumbosacral and right sacroiliac instability due to anomalous development; and old post traumatic lower lumbar and lumbosacral fibrositis. Radiographs revealed broadening and elongation of the left fifth lumbar transverse process with right unilateral incomplete sacralization of the fifth lumbar vertebra, with pseudarthrosis existing at this point. There was approximately a 60% developmental narrowing of the fifth lumbar interspace. Dr. Spillman remarked that the claimant had a chronically weak back due to anomalous development and that he was advised to wear the support brace at work indefinitely. He further remarked that if the claimant complied with this instruction no additional problems were anticipated.

Dr. Arnot, who examined the claimant on March 28, 1973, for purposes of evaluation, reported that the claimant initially complained of acute lower back and right hip pain. He also complained of stiffness in the lower back in the morning when he awakens and pain with stiffness during cold, wet weather. However, he experienced no radiation of pain into either of the lower extremities, nor did he experience pain during any particular motion of the back or legs. Dr. Arnot noted the partial sacralization of the right half of the fifth lumbar vertebra, but found no other abnormalities, with disc spaces all being of normal width and no evidence of trauma, recent or remote. Claimant displayed a good deal of motion in the lower back, could extend 5 degrees, bend to the right and left 20 degrees, and rotate to the right and left 60 degrees, which were within normal limits. Tenderness to the right of the midline at the lumbrosacral junction was noted, although none was found in the upper portion of the low back area or over either the sciatic notch or trunk. Dr. Arnot concluded that the claimant had a basic anomaly of the bony structure of the low back, which, in part, could allow

for an easier sprain of the back than would be anticipated. He found no objective evidence of a permanent disability due to the accident of June 5, 1972.

Peavey maintains that the award of compensation for the 25% loss of use of the right leg was against the manifest weight of evidence. Basically, it argues that the claimant never complained of any injury to his leg and that the medical evidence fails to disclose a permanent partial disability for loss of use of the leg. It is the province of the Industrial Commission, however, to determine the nature and extent of an employee's disability and to draw reasonable inferences from the evidence adduced. (*Chicago Transit Authority v. Industrial Com.,* 61 Ill.2d 78, 84-85.) A reviewing court may not substitute its judgment for that of the Industrial Commission or discard permissible inferences drawn by the Commission merely because the court might have drawn opposing inferences. (*City of Chicago v. Industrial Com.,* 60 Ill.2d 283, 286.) The court is limited to a consideration of whether the Industrial Commission's determinations are contrary to the manifest weight of the evidence. *Pontiac Chair Co. v. Industrial Com.,* 59 Ill.2d 261, 266.

There is no dispute that claimant sustained an accidental injury requiring treatment. According to claimant's testimony he still experienced pain and stiffness in the low back at the time of the hearing before the arbitrator, and slept in traction nightly. Dr. Spillman recommended that claimant should wear a support brace for his back during working hours so as to avoid further problems. While Dr. Arnot found no objective evidence of a permanent disability, he did note tenderness to the right of the midline at the lumbosacral junction almost one year after the injury. Considering this evidence, the Industrial Commission may well have inferred that claimant sustained a permanent partial disability through the injury to his back which resulted in partial loss of use of his right leg.

As we stated in *Chicago Transit Authority v. Indus-*

*trial Com.,* 61 Ill.2d 78, 85, "Consideration of the various medical reports and claimant's testimony relating to his disabilities indicate that the evidence is conflicting and gives rise to reasonable inferences in support of the differing positions. Under such circumstances the Commission's determination will not be set aside." While had this court made the initial determination we might have found an award for permanent partial disability more appropriate, we recently held in *Seay v. Industrial Com.,* 62 Ill.2d 241, 242-43, that where the evidence gives rise to reasonable inferences in support of either the Commission's award for permanent partial loss of use of a member or an award for permanent partial disability, the Industrial Commission's determination will not be reversed.

Accordingly, the judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*