RICHARD FRAKES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Old Ben Coal Company, Appellee).

Fifth District (Industrial Commission Division)   No. 5—87—0843WC

Opinion filed January 31, 1989.

Brad L. Badgley, of Heiligenstein & Badgley, P.C., of Belleville, for appellant.

William W. Hart, Jr., of Hart & Hart, of Benton, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner Richard Frakes sought workers' compensation benefits after he suffered a head injury while working for respondent Old Ben Coal Company. An arbitrator awarded temporary total disability benefits of $247.14 per week for 72³/₇ weeks, and $247.14 per week for 300 weeks as benefits for a permanent partial disability to the extent of 60% of the man as a whole, and medical benefits. The Industrial Commission (Commission) reduced the permanent partial disability benefits from 300 to 50 weeks, finding the extent of the disability was only for 10% of the man as a whole. The Commission affirmed all other aspects of the arbitrator's decision. The circuit court of Franklin County confirmed the Commission's decision. Petitioner contends on appeal that the Commission's finding of only 10% disability is against the manifest weight of the evidence.

On August 9, 1982, the 31-year-old petitioner was working in a mine when a large rock struck his safety helmet. He was taken to the hospital, where he was told to take Tylenol for pain. Nine days later, petitioner began stumbling when he walked, and later experienced severe headaches, nausea and dizziness. Two or three weeks later he began experiencing periods of unconsciousness. Petitioner has not worked since the day of the injury. The mine closed in January 1983.

Petitioner's wife, Rhonda, testified regarding petitioner's imbalance, headaches, periodic seizures and periods of unconsciousness. The dozens of seizures he suffered were brought on by motion or activity. Sam Mitchell, Rhonda's employer and petitioner's attorney during the initial proceedings in this case, testified that in January 1984 he went to petitioner's home after receiving a call for help from Rhonda, and found petitioner apparently unconscious. After driving petitioner to see Dr. Thompson at a clinic, Mitchell and a friend carried petitioner back to the car and took him home. Mitchell had observed no other incidents of this nature.

Initially, petitioner's family physician referred him to Dr. R. Anthony Marrese, who referred him to Dr. M. Coyle Shea, a neuro-otologist, specializing in ear, nose and throat disorders.

On December 3, 1982, Dr. Shea examined petitioner and found improper eye tracking. He diagnosed post-concussion syndrome. Dr. Shea testified that his chart indicated petitioner had spontaneous vertical nystagmus, directional preponderance and abnormal vertical sinusoidal tracking. His formal report, however, "was not as forcefully stated, I should say, as it really existed." The report indicates essentially negative results of the key test which Dr. Shea relied upon, an electronystagomography (ENG) test, which records eye movements

upon stimulation of different components of the balance system.

Two subsequent visits showed improvement of subjective symptoms. Dr. Shea recommended to petitioner's father and to his family physician that they seek a psychiatric consultation because of petitioner's depression and suicidal wishes. Dr. Shea believed petitioner had seen a neurosurgeon, but he was unfamiliar with that doctor's findings. Dr. Shea was primarily an otologist and not a neurologist, and thus he always sends a case like this to a neurologist for further evaluation because it was not an inner ear problem.

Dr. Shea testified that, assuming the history and other "information that I was given is true, then I would have to say that the findings that we have come up with indicate that there was damage done from this injury." He believed petitioner was probably disabled for work involving machinery. However, because balance and speech problems could easily be feigned, Dr. Shea would prefer to do another ENG before making a recommendation that petitioner not work near machinery.

In July 1983, Dr. David M. Reisler examined petitioner at respondent's request. Dr. Reisler found no objective signs of injury. All tests were negative. Dr. Reisler could not confirm a diagnosis of cerebral concussion. He saw insufficient evidence of vestibular dysfunction to warrant additional time away from work. Dr. Reisler concluded that there was no evidence of permanent partial disability as a result of the injury, and he opined that petitioner could return to regular employment without restriction.

On December 29, 1983, Dr. Reisler wrote that he had reviewed Dr. Thompson's 1982 and 1983 records, and had read Dr. Shea's January 17, 1983, report indicating he detected evidence of spontaneous vertical nystagmus on December 1, 1982. Dr. Reisler repeated that his own examination of petitioner yielded no such indication.

On February 9, 1984, Dr. Reisler wrote that petitioner was hospitalized in January 1984 for neurologic, cardiologic and psychiatric evaluations. Cardiovascular function tests were negative. Neurological tests remained within normal limits. Dr. Reisler concluded that "he demonstrated no evidence of neurologic dysfunction for which he required additional treatment." Dr. Reisler noted that at the time of the accident "[w]hether the patient actually suffered a concussion with changes in neurologic function or was merely stunned momentarily remains unclear from material available to me."

Dr. Jon H. Robertson, a neurologist, examined petitioner in April 1984. He reported that Dr. Shea's evaluation "showed only abnormal vestibular studies which showed no abnormality other than some

spontaneous vertical nystagmus and a very slight directional preponderance to the left. It was Dr. Shea's impression that because of the central vestibular study abnormality, [petitioner's] 'dizziness,' had an organic basis." Dr. Robertson stated that his neurological examination of petitioner was normal. EEG and CT scan tests were also normal. Dr. Robertson concluded: "In view of this gentleman's normal neurological examination and negative neuro-diagnostic studies, I found no evidence of permanent partial disability related to the injuries which he described occurring in August, 1982."

In January 1984, Dr. James B. Smith, a psychiatrist, evaluated petitioner. He found petitioner "suffered [from] a significant post-traumatic depression in the first several months following the accident with symptoms of a significant depressive illness being present at that point in time." At the time of the examination, he found no symptoms of a significant depression and anxiety neurosis. Dr. Smith would release petitioner to resume normal employment activity without restriction as long as Dr. Reisler's neurological tests were normal.

Before the Commission, on April 25, 1986, petitioner testified that his condition had not improved. He continued under Dr. Thompson's care. He had not sought work and remained at home during the day.

■ Petitioner contends that the decision of the Commission finding the extent of his disability was 10% is against the manifest weight of the evidence. It is within the province of the Commission to weigh the evidence, judge the credibility of the witnesses, draw reasonable inferences from the testimony, and determine the nature and extent of the disability. (*Interlake, Inc. v. Industrial Comm'n* (1983), 99 Ill. 2d 69, 457 N.E.2d 415.) The Commission must resolve disputed questions of fact and resolve conflicting medical evidence. (*Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 454 N.E.2d 655.) The Commission's determination will not be disturbed unless it is against the manifest weight of the evidence. (*Doyle v. Industrial Comm'n* (1983), 96 Ill. 2d 364, 449 N.E.2d 1352.) The Commission is not required to adopt the arbitrator's conclusion as to the extent of petitioner's disability. *Newgard v. Industrial Comm'n* (1974), 58 Ill. 2d 164, 317 N.E.2d 524.

The Commission had before it evidence that petitioner suffered little or no permanent disability as a result of the work-related accident. Dr. Reisler examined petitioner several times, including testing during an extensive hospital stay, over a period of several years. All tests were negative. Dr. Reisler repeatedly concluded that petitioner was not disabled and could return to work without restriction.

Petitioner relies heavily on Dr. Shea's finding of spontaneous ver-

tical nystagmus (improper eye tracking), and diagnosis of post-conclusion syndrome. Dr. Shea acknowledged that his formal report indicated essentially negative results of the ENG. In addition, Dr. Shea declined to conclude that petitioner could not work around machinery until further tests were done. Dr. Shea emphasized that his diagnosis was "primarily just stating that this is not an inner ear problem," and that he always referred such cases to a neurologist. Dr. Shea had seen no findings by a neurologist who examined petitioner.

Dr. Robertson, a neurologist, indicated he did not find Dr. Shea's findings to be significant. He reported that Dr. Shea's evaluation "showed only abnormal vestibular studies which showed no abnormality other than some spontaneous vertical nystagmus and a very slight direction preponderance to the left." All neurological tests performed by Dr. Robertson were normal. He concluded that there was no evidence of permanent partial disability related to the injuries sustained at work.

Dr. Smith believed petitioner might have suffered a post-traumatic depression in the first several months following the accident. However, at the time of the inpatient examinations, he found no symptoms of a significant depression or anxiety neurosis. Dr. Smith opined that petitioner could resume normal employment activity without restriction.

Similarly, no other medical reports in the record indicate any significant permanent disability.

■ The evidence strongly supports the Commission's finding that petitioner was 10%, and not 60%, disabled. We hold that the Commission's findings as to the nature and extent of petitioner's injuries are not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Franklin County, confirming the decision of the Industrial Commission, is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.