(No. 21832.—

THE NORTHWESTERN BARB WIRE COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(LESTER GLEASON, Plaintiff in Error.)

*Opinion filed October 21, 1933.*

H. A. BROOKS, and F. M. KAUFMAN, for plaintiff in error.

HOMER R. HOPPS, for defendant in error.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

While employed by the Northwestern Barb Wire Company, at Sterling, Lester Gleason, a millwright, sustained an accidental injury to his testicles arising out of and in the course of his employment. First aid, medical, surgical and hospital services were provided by the employer, together with compensation for the period of temporary total incapacity for work. The only question in dispute is the nature and extent of the disability. An award was made by the arbitrator in favor of Gleason in the sum of $1969.46, being one-half of the amount of his weekly wages for 150 weeks, under paragraph (e), sub-section 16¾, of section 8 of the Workmen's Compensation act, which provides "for the loss of a testicle, fifty percentum of the average weekly wage during 50 weeks, and for the loss of both testicles, fifty percentum of the average weekly wage during 150 weeks." The Industrial Commission on review confirmed the award, but the circuit court, upon a writ of *certiorari* sued out by the employer, set aside the award for loss of the testicles, and the case comes here for review by writ of error.

The injury suffered by the employee in this case is very unusual in character and involves a construction of a subsection (16¾, *supra,*) of the Workmen's Compensation act, added thereto in 1929, which has not previously been before this court.

Gleason was a young man twenty-nine years old. He was working with his employer's machinery at the time of the accident and in some manner his clothing was caught in a revolving shaft. His clothing was wound up on the shaft, which also wound and tore the head and half the body off of his penis and tore his testicles completely out of the scrotum, leaving them hanging by elongated spermatic chords between his knees. All of his clothing, except his shoes and a sleeve of his jacket, was torn off of him

and wound around the shaft. A doctor was summoned and found Gleason lying on a stretcher, bleeding from between the legs. The openings in the rectum and peritoneum were all in one. The doctor ordered him sent to a hospital and proceeded to operate upon him. As the scrotum containing the testicles was gone, the doctor placed the right testicle in the anterior chamber or wall of the abdomen, in the region of the symphisis pubis or anterior region. He placed the left testicle above what remained of the penis, in an artificial sack of grafted skin taken from the inner surface of Gleason's thighs. There was no infection and Gleason left the hospital about seven weeks later.

Gleason testified that he had never experienced any sexual sensations since the accident, as a result thereof; also that he had no normal desire for sexual intercourse and had not had an erection since the accident. His testimony in this regard was corroborated by Dr. Rubright, the surgeon in the case, who was the only other witness. From his observation of the case following the dismissal from the hospital the doctor's conclusion was that Gleason would never be able to have an erection because of the nature of the grafting and that he will never be able to have sexual intercourse. In answer to a direct question whether the testicles would ever again be useable by Gleason, Dr. Rubright testified: "That is difficult to say, but it is doubtful. Up to the present time no indications of function appear, and I am of the opinion that they will never be useable." The doctor had never had another case like this, but no attempt was made to change his conclusion that as a result of the injury to Gleason his testicles had permanently ceased to function in their normal manner.

In behalf of the employer, however, it is contended that sub-section 16¾ above quoted does not provide compensation for the "loss of use" of the testicles, as do other sub-sections relating to loss of hands, fingers, feet, etc., but only provides for "loss" of one or both testicles. It is ar-

gued that since the testicles in this case were not completely severed but with their spermatic chords were successfully grafted back into different parts of Gleason's body, there has been no "loss" within the meaning of the act. This argument, even if not contradicted by the undisputed testimony of the doctor, is without legal weight in this State. The incapacity to use need not be tantamount to an actual severance—it is enough if the normal use has been entirely taken away. (*Mark Manf. Co.* v. *Industrial Com.* 286 Ill. 620; *Ballou* v. *Industrial Com.* 296 id. 434.) The loss of a member is complete when its normal use has been taken away. (*Heaps* v. *Industrial Com.* 303 Ill. 443.) It would be unreasonable to suppose that the legislature intended a physical severance of the testicles before an employee could recover compensation for their loss, as a violent blow on one or both of them might render it or them as useless as if completely severed. In this case the testicles were not only lost from their usual and natural resting place and sewed up in separate compartments elsewhere, but were lost in the more serious sense that they never again could perform their normal function having to do with sexual intercourse and the propagation of offspring. Under any reasonable view, an injury to an employee under the Workmen's Compensation act which renders his testicles useless for the performance of their normal functions is compensable.

The finding and order of the Industrial Commission awarding compensation to Gleason for the loss of his testicles were justified by the evidence. The circuit court is not authorized to substitute its judgment for the commission's unless the latter is clearly and manifestly against the weight of the evidence. *Rittler* v. *Industrial Com.* 351 Ill. 338.

The judgment of the circuit court is therefore reversed and the cause is remanded, with directions to enter a judgment confirming the decision of the Industrial Commission.

*Reversed and remanded, with directions.*