(No. 57641.—

GRANITE CITY STEEL COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Billy G. Gibbons, Appellee).

*Opinion filed September 23, 1983.*

William L. Rogers, of Keefe & De Pauli, P.C., of Fairview Heights, for appellant.

Paul A. Guzzardo, of Calvo & Guzzardo, of Granite City, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The claimant, Billy G. Gibbons, fell in a hole and injured his groin while at work for the respondent, Granite City Steel Company. He reported that this injury left him impotent, and he filed a claim for compensation.

The Industrial Commission arbitrator found that the claimant's injury had arisen out of and in the course of his employment with respondent, and that it had caused him the permanent and complete loss of the use of his testicles. The arbitrator awarded 2 5/7th weeks for temporary total disability and 150 weeks for permanent partial disability. The Commission affirmed this decision on review, and in an appeal to the circuit court of Madison County, the Commission's decision was confirmed. The respondent appealed directly to this court (87 Ill. 2d R. 302(a)), contending only that the Commission's decision is against the manifest weight of the evidence.

The only witnesses before the arbitrator were the claimant and his physician, Dr. Lawrence M. Aronberg. The claimant testified that on July 20, 1976, he was walking in a poorly lit area of the respondent's plant when he stepped in a hole with his left leg and all of his weight fell on his groin. After this fall he was nauseated, had a terrible headache, and had an excruciating pain in the groin area. He also scraped and bruised his right knee, hand, and wrist in the fall.

The claimant testified that he informed the foreman

of his injury and was sent to the plant dispensary. The plant physician released the claimant for work, but he was still in pain and felt nauseated, and the foreman allowed him to take the rest of the day off. The claimant returned to work on his next scheduled work day. In the days following the accident, the claimant reported that his testicles were swollen and discolored. He also testified that since the accident he has been impotent.

In September 1976, the plant physician referred the claimant to Dr. Aronberg, a urologist, who had the claimant removed from work for two and a half weeks in order to place him in a hospital for tests. The claimant testified that although he has been continuously under Dr. Aronberg's treatment since that time, and has received monthly hormone injections, he has not had any improvement in his condition. On review before the Commission, the claimant testified that he has continued to receive monthly injections but has still had no improvement in his condition.

Dr. Aronberg testified, by deposition, that the claimant was referred to him in September 1976, because the plant physician had found blood cells in his urine. Dr. Aronberg had the claimant admitted to a hospital and ran tests which confirmed the presence of blood and pus cells, but he could not locate their source. The initial bleeding stopped near the end of October 1976, but pus cells continued to be present in the samples, and the bleeding recurred periodically.

In a visit on October 1, 1976, the claimant told Dr. Aronberg that he was having potency problems. A laboratory test indicated that the claimant only had a testosterone level of 365 units out of a normal range of 350 to 1,200. Dr. Aronberg began administering monthly injections of testosterone as a treatment for this condition, but the claimant's testosterone level continued to fall to as low as 231 units in February 1979. When the testos-

terone level continued to fall after Dr. Aronberg doubled the dosage of the monthly testosterone injection, he switched to another substance, human chorionic gonadotrophin, which was also administered in monthly injections. Dr. Aronberg testified that when he last saw the claimant, his condition was unchanged and he still reported an inability to achieve an erection.

Dr. Aronberg stated that he could not offer an opinion on whether the claimant's accident caused his condition of impotence. He did, however, place significance on the fact that the claimant had reported a history of normal erection prior to the accident. Dr. Aronberg testified that "if you have a person who, prior to some accident, has been able to function, and following it has been unable to, one would think historically *** they are connected, but that does not prove it" from a medical point of view.

"It is the function of the Industrial Commission to determine the facts and to draw reasonable inferences and conclusions from competent evidence in the record. The function of this court is limited to a determination of whether the findings of the commission are against the manifest weight of the evidence." (*Overland Construction Co. v. Industrial Com.* (1967), 37 Ill. 2d 525, 531.) In this case, the respondent contends that the Commission's decision to award compensation for permanent partial disability is against the manifest weight of the evidence because the claimant failed to establish that the accident caused his impotence and that the condition is permanent. Neither contention has merit.

Concerning the issue of causation, "it has long been established that proof of good health prior to the time of the injury and a subsequent condition of ill being involving injury to the affected area creates an issue of fact as to the causal relationship between the injury and the condition of the ill being in question." (*A. O. Smith*

*Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 245; *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 143.) The claimant here testified that he had no problem with potency prior to his groin injury, but that after the injury he has been impotent. From this testimony, the Commission could reasonably infer that this injury led to the condition of impotence. Dr. Aronberg's testimony was not inconsistent with this inference, and in fact he admitted that it might be an appropriate one. Contrary to the respondent's assertions, there is no requirement that a claimant present affirmative expert testimony on the issue of causation. (See *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 144 ("We know of no case requiring a doctor's testimony to establish causation and the extent of disability ***.").) The evidence in the record adequately supports the Commission's finding that the claimant's injury caused his impotence.

Concerning the permanence of an injury, this court has observed that "a long period of time without substantial improvement is sufficient time to justify a finding that an injury is permanent." (*Overland Construction Co. v. Industrial Com.* (1967), 37 Ill. 2d 525, 531.) In this case the claimant suffered his injury in July 1976 and since that time he has been impotent without any indication of an improvement in this condition. Dr. Aronberg declined to state an opinion that the claimant's condition was permanent, but he did not deny that possibility. The respondent did not present any evidence to oppose the reasonable inference from the evidence presented that the claimant's condition is permanent. Therefore, the Commission's finding to that effect is not against the manifest weight of the evidence.

For these reasons, the judgment of the circuit court is affirmed.

*Judgment affirmed.*