WAYNE K. BOSTON, Appellant and Appellee, *v.* THE INDUSTRIAL COMMISSION *et al.* (George R. Mellor, Sr., Appellee and Appellant).

Fourth District (Industrial Commission Division)  Nos. 4—84—0095WC, 4—84—0096WC cons.

Opinion filed July 10, 1984.

Heyl, Royster, Voelker & Allen, of Springfield (Gary L. Borah, of counsel), for Wayne K. Boston.

Harry G. Story and Tim E. Moreland, Jr., both of Jacksonville, for George R. Mellor, Sr.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

George R. Mellor, Sr., claimed compensation for accidental injury to his left testicle and consequent loss of the reproductive use of both testicles, resulting from trauma incurred while driving a dump truck over rough roads as an employee of Wayne K. Boston. The arbitrator awarded six weeks' temporary total disability, medical expenses and compensation for the total loss of use of the left testicle. Both the claimant and the employer appealed to the Industrial Commission. The Commission affirmed the decision of the arbitrator as to temporary total disability and medical expenses but found a 100% permanent loss of the use of both testicles. The circuit court confirmed the award of temporary total disability and medical expenses but reduced the award to compensation for permanent loss of 50% of the use of both testicles.

The claimant appeals, contending that the judgment of the circuit court is against the manifest weight of the evidence. The employer also appeals, contending that the injury is not causally related to the trauma of the accident, that there is no compensable loss under the particular circumstances since only the reproductive function of a testicle is lost, and that, in any event, there is no evidence of injury to the right testicle. The cases have been consolidated.

The claimant, a 48-year-old male with three teenage children, was employed as a truck driver. On June 1, 1978, he was hauling dirt over a rough road when the truck "hit a series of holes." Claimant bounced on the seat and "mashed" his left testicle. He experienced immediate pain and nausea. He had never had a problem with his testicles before.

Claimant reported the accident to his employer that day and continued to work the next two days, while continuing to experience pain and swelling. He rested Sunday and returned to work Monday, June 5, but was unable to continue working. He went to Passavant Memorial Area Hospital to have the left testicle examined.

At the hospital the examining physician, Dr. Charles Wilson, diagnosed a prostate infection and an infection in the left epididymis. He treated claimant in the hospital until June 8 with intravenous antibiotics, and released him to continue the medication orally at home. He readmitted claimant June 10, because the condition was getting worse, and administered antibiotics intravenously. When claimant

failed to respond well to the treatment, Dr. Wilson surgically removed the left epididymis "so the infection did not spread to his left testicle and cause the loss of his testicle," and performed a right partial vasectomy "to prevent any infection from going into that testicle at a later date." The operation rendered claimant sterile.

Dr. Wilson described the structure of the affected area. The vas deferens, a tubular structure, leads from the prostate gland to the epididymis, which, in turn, leads to the testicle. The epididymis is a tube which carries sperm between the testicle and the vas deferens. Epididymitis is an infection in the epididymis. A man has one prostate gland, but two separate vasa deferentia, epididymides and testicles.

Dr. Wilson diagnosed epididymitis, a substantial bladder infection, and a prostate infection in claimant. He said that, in most cases, epididymitis arises from a prostate infection and, referring to claimant's epididymitis, said, "I suspect that it arose from his prostate infection."

Dr. Wilson explained that the cause of prostate infections is unknown, but that an activity like truck driving, which causes pressure or stimulation of the prostate gland area, between the scrotum and the rectum, can aggravate a prostate infection.

When asked his opinion as to what caused the spread of the infection from the prostate to the epididymis, Dr. Wilson answered, "It might have been because of his occupation and it might not have been from his occupation." He also testified that while the vasectomy might be characterized as "precautionary," there "is no way to tell when he might have developed another prostate infection and epididymitis on the other side. It might have been three days or three years from then."

The doctor further testified that, following the vasectomy on the right side, the claimant would retain full sexual capability and would not be impotent. He also stated that a vasectomy was a standard part of a surgical procedure for a man of the claimant's age and in light of the pain and discomfort where there has not been a suitable response to antibiotic treatment.

We first address the contention of the employer that the claimant failed to present sufficient evidence to meet his burden of proving a causal relationship between the claimed loss and his employment. As to the left testicle, the contention is based on the alleged failure of medical testimony to unequivocally state a causal connection between driving over rough roads and the prostate infection resulting in the epidymectomy and vasectomy. We conclude, however, that the chain of

events establishes a sufficient circumstantial connection to support the Commission's finding of causation.

■■ ■ "Where medical knowledge of an ailment is limited, medical testimony as to causation cannot and need not be unqualified and unequivocal." (*United States Steel Corp. v. Industrial Com.* (1964), 32 Ill. 2d 68, 74.) While the cause of the prostate infection was unknown medically, Dr. Wilson testified to the view of many urologists that irritation from the vibration of a truck or tractor is sufficient to cause a prostate infection or an aggravation of such infection. The testimony that claimant was in good health prior to the accident, and his subsequent condition of ill-being, created a factual issue as to causation. (See *Granite City Steel Co. v. Industrial Com.* (1983), 97 Ill. 2d 402, 407.) From the facts, and the legitimate inferences it could draw from the facts, the Commission could find a probable causal relation between the accident and the injury even though the doctor was unable to state his conclusion as to causation within a reasonable degree of medical certainty. (See *Certi-Serve, Inc. v. Industrial Com.* (1984), 101 Ill. 2d 236.) In *Certi-Serve*, claimant, a pipefitter, suffered injury following an incident in which dust and debris from a bird nest flew into his eyes. Within two weeks claimant had become legally blind in his left eye due to a disease diagnosed as presumed ocular histoplasmosis syndrome. The doctors testifying were unable to state with any degree of medical certainty that the disease in the eye was causally related to the accident. The *Certi-Serve* court held that the chain of events, together with the testimony to the effect that the systemic histoplasmosis organism is carried by bird droppings and that systemic histoplasmosis and presumed ocular histoplasmosis may be related, was sufficient to support the Commission's finding of causation even though there is no definite association, and the exact cause cannot be determined definitely without removal of the entire eye for a visual examination. 101 Ill. 2d 236, 245-46.

■■ As to the right testicle, we conclude that the evidence also sufficiently establishes causation. The medical testimony was that a vasectomy was performed severing the right vas deferens "to prevent any infection from going into that testicle at a later date." This was stated to be a precautionary measure not required by the immediate infection but within standard medical practice for a man of claimant's age and in light of his pain and lack of response to antibiotic treatment. The Commission could properly resolve any conflict as to the necessity of the vasectomy and find that the causal connection between the initial injury and the loss of the reproductive function of the right testicle had been established. The evidence supports a find-

ing that the claimant's occupation of truck driving caused or aggravated the prostate infection which led to the entire sequence of events resulting in the vasectomy. We find that it was within the discretion of the Commission to make the findings of fact and inferences from the facts which supported its conclusion. See, *e.g., Granite City Steel Co. v. Industrial Com.* (1983), 97 Ill. 2d 402, 406.

■ On the more difficult question of whether the loss of the reproductive function of the testicle, alone, supports the Commission's finding of a 100% loss of use, we conclude that it does not.

Section 8(e)(15) of the Workers' Compensation Act provides that compensation for "the loss of or the permanent and complete loss of the use of" one testicle shall be 50 weeks, and of both testicles shall be 150 weeks. Ill. Rev. Stat. 1983, ch. 48, par. 138.8(e)(15).

Section 8(e)(16) provides compensation for permanent partial loss of the use of a scheduled member. Ill. Rev. Stat. 1983, ch. 48, par. 138.8(e)(16).

There is well-recognized medical authority that the testicles serve three functions: (1) producing hormones affecting the function of the entire body; (2) producing hormones making sexual intercourse possible; and (3) producing sperm. 4B Gray's Attorney's Textbook of Medicine sec. 301.13 (1983).

To recover an award for 100% loss of use the claimant must prove that he suffered the loss of the use of both testicles. Illinois has recognized that, to recover for loss of use of a part of the body, the important question is whether its normal function has been impaired. (See *A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240, 244-45.) Illinois has considered the complete loss of use of the testicle but has not considered the specific question raised here, that of loss of fertility alone. In *Northwestern Barb Wire Co. v. Industrial Com.* (1933), 353 Ill. 371, claimant lost the total use of his testicles as the result of an industrial accident. They were reimplanted in the abdomen. The court noted that they "were lost in the more serious sense that they never again could perform their function having to do with sexual intercourse and the propagation of offspring." (353 Ill. 371, 374.) In *Granite City Steel Co. v. Industrial Com.* (1983), 97 Ill. 2d 402, claimant suffered a groin injury which left him impotent. The supreme court upheld the Commission's award of compensation for the loss of the use of both testicles. In *A. O. Smith Corp. v. Industrial Com.* (1972), 69 Ill. 2d 240, claimant's penis was crushed and the resultant injury to the erectile tissue impaired claimant's ability to have sexual intercourse. The Commission awarded compensation based on the loss of use of both testicles, although the function of the testicles them-

selves had not been damaged.

The supreme court recognized that the *A. O. Smith* claimant could no longer engage in sexual intercourse, nor could he propagate offspring, though the testicles, themselves, were normal. It affirmed the Commission's award of compensation for 100% loss of use of both testicles because both of the main functions were lost. Here claimant suffered the loss of only one of those functions.

Our recognition of the fact that there are multiple functions of the testicles leads us to the conclusion that the loss of a single function, the ability to procreate, is intended to be treated under the Workers' Compensation Act as a partial loss of use. The language of the Act supports this. Compensation is awarded for "permanent *and complete* loss of the use" of the testicle. (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 48, par. 38.8(e)(15).) Section 8(e)(16) provides compensation for permanent *partial* loss of use of a scheduled member. (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(e)(16).) To give effect to both parts of the Act, partial compensation must be awarded for partial loss of use. This analysis is consistent with awards which have been made for permanent partial loss of use of other scheduled members (See, *e.g., County of Cook v. Industrial Com.* (1979), 78 Ill. 2d 320 (arm); *Walker v. Industrial Com.* (1978), 72 Ill. 2d 408 (eye); *Ford Motor Co. v. Industrial Com.* (1973), 55 Ill. 2d 549 (hand).) A similar analysis was used in awarding compensation for partial loss of use of an eye when only the lens was removed and other functioning components remained. See *Pridgeon v. Industrial Com.* (1982), 89 Ill. 2d 477, 480.

If the potency function had been lost as in the cases cited a different conclusion would have been called for since the ability to use the testicles then would have been totally lost. Thus in *Granite City* the claimant who lost his potency was awarded 100% for the loss of use of his testicles since the loss of the hormonal function does mean loss of the entire function. In *A. O. Smith*, the sole unimpaired testicular function was that of production of hormones to the body. In this case, however, the use of the testicles was not completely lost and, in particular, the hormonal function was not impaired. The bodily hormonal function and the hormonal function permitting sexual intercourse remained. Thus, this claimant suffered a partial loss of the use of the member.

In reaching this conclusion we do not accept the employer's argument that claimant is not entitled to recovery because he has not proved that the reproductive function was of any use to him. While claimant expressed no affirmative desire to have children, neither did

he express a desire to have no more children. Testimony that claimant understood that the vasectomy was required "to stop the infection on the other side" demonstrates that he focused his attention on curing the infection, and not on whether he wanted future children. Moreover, we find nothing in the statute or the authorities that supports the position that claimant must prove that the proper function of a scheduled member was of value to him in order to recover for the loss or loss of use.

It is noted that the Act contains no standards for determining the percentage of loss of use of a member. (*Pridgeon v. Industrial Com.* (1982), 89 Ill. 2d 477, 479.) In *Pridgeon,* the court noted that the loss of use of an eye is "a question of fact and is not one to be determined by mechanical measurement as to corrected or uncorrected vision." (89 Ill. 2d 477, 479.) The circuit court determined that the evidence supported compensation for a 50% loss of use in this case. However, the matter should be returned to the Commission to consider all the circumstances, under our guidelines, and then to assess the proper percentage of loss. The determination of permanent partial loss of use of a member is not a matter capable of mathematically precise determination, and the estimation of partial loss is peculiarly the function of the Commission, not the circuit court, under the statutory scheme.

The judgment of the circuit court of Morgan County is therefore reversed and the cause remanded to the Industrial Commission for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY, KASSERMAN, McNAMARA, and WEBBER, JJ., concur.