JOSEPH LEVKOVITZ, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Rudolph's Food Service, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—93—0926WC

Opinion filed December 23, 1993.—Rehearing denied February 4, 1994.

Lewis, Davison & Hetherington, Ltd., of Chicago, for appellant.

Michael L. Taden, of Chicago (Marcy I. Singer, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The arbitrator awarded claimant Joseph Levkovitz temporary total disability (TTD) benefits for 32 weeks, medical expenses and permanent partial disability (PPD) to the extent of 8% of the man as a whole pursuant to section 8(d)(2) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2)). The Industrial Commission (Commission) affirmed the arbitrator's award as to the TTD and medical expenses but modified the PPD award finding claimant was permanently disabled to the extent of 20% of the man

as a whole. The circuit court of Cook County confirmed the Commission. Claimant appeals, arguing the Commission erred in (1) failing to include the value of his meals in computing his average weekly salary, (2) not awarding payment for services rendered at the Male Sexual Dysfunction Institute (MSD Institute) as a medical expense, and (3) failing to include compensation for his sexual dysfunction in the PPD award, which was, therefore, against the manifest weight of the evidence. We affirm.

The facts will be reviewed only as they relate to the issues raised on appeal.

Claimant had been manager of Fiddler's Restaurant for approximately 15 years. He worked four days per week and spent 65 to 70 hours per week at the restaurant. Claimant earned $400 per week and ate his meals at the restaurant on the days he worked. He estimated the value of these meals was $15 per day.

On April 30, 1984, claimant was injured when he lifted a beer barrel, weighing approximately 100 pounds, intending to put it on the beer line. The symptoms were a pain in his neck, left shoulder, arm and hand.

Claimant testified that after the injury, he began to experience difficulty in sexual relations with his wife. He characterized his sex life as "excellent" prior to the accident and estimated he had relations with his wife three times a week prior to April 30, 1984. However, in approximately 1986, claimant began having trouble maintaining an erection. His sex life worsened and he and his wife engaged in sexual relations less than once a month. Claimant's condition had become steadily worse in the last couple of years. In early November 1988, some $4^{1}/_{2}$ years after the injury, claimant sought medical treatment from Dr. Sheldon Berman at the MSD Institute. Claimant's business partner had read a newspaper article by Dr. Berman and suggested claimant go to the MSD Institute. Claimant was given a complete physical examination and various other tests were performed. The medical records from the MSD Institute indicate Dr. Berman recommended claimant have a prosthesis implanted in his penis.

Dr. Michael Treister, an orthopedic surgeon, examined claimant on February 27, 1986. Dr. Treister opined that such a condition would be related to the patient's diabetes and sexual dysfunction.

Dr. Treister explained that it is not unusual for diabetics to develop sexual dysfunction through the inability to maintain an erection. This dysfunction has either a neurological dysfunctional basis or a microvascular dysfunctional basis which would involve circulation complications.

On cross-examination, Dr. Treister admitted that a person who was prediabetic could eventually come to need oral medication or insulin to control his or her diabetes as a natural progression of the disease. He admitted he had never treated anybody for a condition of sexual dysfunction but would refer patients with this problem to another physician. He also explained that although he may have patients who are diabetics, he does not actually treat people for that condition and does not prescribe insulin or oral medication for diabetes.

Dr. Nathanial D. Greenberg reviewed claimant's records from Dr. Doctor, the Skokie Valley Hospital, and the MSD Institute. He noted claimant had high blood-sugar levels prior to April 30, 1984, which would indicate a mild diabetic condition. Dr. Greenberg also noted claimant was substantially overweight, which increased his need for insulin, but that his pancreas was unable to meet this need.

Based on the records from the MSD Institute, Dr. Greenberg diagnosed claimant as having a moderately severe degree of organic impotency. When asked whether based on a reasonable degree of medical and surgical certainty there was any causative relationship between that condition of ill-being and claimant's diabetes, Dr. Greenberg replied, "Diabetes is one of the commoner causes of impotence in middle-aged males who happen to be diabetic, of course." Dr. Greenberg explained that impotence is caused either by impairing arterial circulation or degeneration in peripheral nerves.

On cross-examination, Dr. Greenberg admitted claimant was overweight and the fact that he did not lose weight between 1977 when he was first found to have high blood-sugar levels and the hospitalization in 1984 could have been a factor in the worsening of his diabetes.

Dr. William D. Barnhart, a physician specializing in internal medicine, examined claimant's medical records which indicated claimant first showed signs of a diabetic condition in 1977.

Dr. Barnhart attributed the increase in claimant's blood-sugar levels to the natural progression of his diabetes. He explained that diet and weight loss, which claimant had not followed, were no longer able to control his diabetes. The next logical step would be to prescribe oral medication to lower claimant's blood-sugar level. This was the course of treatment in claimant's case. Dr. Barnhart did not believe the use of Decadron could have caused the increase in claimant's blood-sugar level subsequent to his release from the hospital.

Dr. Barnhart found the medical records from the MSD Institute contradictory because claimant was able to masturbate to ejaculation

as well as occasionally achieving erection. He was unsure as to whether there was a demonstrated medical cause of impotence in claimant. Dr. Barnhart explained that diabetes causes impotency in two ways, blockage of the arteries that furnish blood flow to the penile tissue and nerve damage which prohibits an erection and the sustaining of an erection. Last, Dr. Barnhart opined that claimant's present diabetic condition had no relationship to the administration of steroids in the hospital in May 1984. Likewise, Dr. Barnhart did not believe that claimant's impotency, if it existed at all, was caused by the steroid administration in 1984.

The arbitrator issued his decision on May 30, 1989. He awarded claimant TTD for a period of 32 weeks, medical expenses in the amount of $3,290.55, and PPD to the extent of 8% of the man as a whole, finding the injuries caused an aggravation of claimant's preexisting cervical and diabetic condition.

Specifically, the arbitrator found claimant had a diabetic condition as early as 1977 and the fact that claimant was overweight and the natural complications from diabetes could have been a factor in its worsening condition. The arbitrator concluded claimant's preexisting diabetic condition was aggravated by the April 30, 1984, incident.

As to claimant's impotency, the arbitrator found claimant failed to establish he was impotent as a result of the April 30, 1984, injury. The arbitrator noted there was no detailed report setting forth the diagnosis or treatment recommendation by Dr. Berman nor were any doctors from the MSD Institute called to testify or deposed with regard to claimant's impotency and the cause thereof. Although claimant underwent extensive testing, no doctor's report interpreting those tests was found in the record. Finally, the arbitrator noted Dr. Greenberg indicated the MSD Institute records show the impotence was incomplete. The arbitrator concluded claimant failed to sustain his burden of proof that he was impotent because of the April 30, 1984, injury.

The arbitrator awarded some medical expenses but specifically denied the MSD Institute bill for $3,293, finding claimant failed to establish the services provided by the MSD Institute were necessitated by the April 30, 1984, accident. Therefore, the employer was not responsible for this bill.

Claimant's average weekly wage was calculated to be $400. The arbitrator noted claimant testified as to the approximate value of meals eaten at the restaurant while he was working, but declined to include that value in the average weekly wage because there was "nothing to substantiate his claim, such as income tax returns,

introduced into evidence." As to TTD, the arbitrator found claimant was entitled to 32 weeks for the period between May 1, 1984, through December 10, 1984, when claimant returned to work.

On June 27, 1991, the Commission adopted the arbitrator's decision, except as to the PPD award. With respect to that portion of the decision, the Commission found claimant was permanently partially disabled to the extent of 20% of the man as a whole. The Commission believed the arbitrator's award was inadequate based on the medical testimony accepted by the arbitrator and adopted by the Commission, including that the accidental injury aggravated his diabetic condition. The circuit court of Cook County confirmed the Commission on February 11, 1993, and claimant timely filed his notice of appeal.

■ Claimant first contends the Commission erred by failing to include the value of his meals in computing his average weekly wage. He notes that a recognized treatise in this area of law states the average weekly wage should include "any thing of value received *as consideration for the work*, as, for example, tips, bonuses, commissions and room and board." (Emphasis added.) (2 A. Larson, Workmen's Compensation § 60.12(a), at 10—648 through 10—655 (1993).) Claimant acknowledges there are no Illinois cases on this issue but refers to cases from other jurisdictions where the value of meals was included in this calculation. Finally, claimant suggests a broad definition of "average weekly wage" is found in the statute and states that he could not substantiate the value of these meals on his tax returns because the IRS has determined that meals furnished for an employer's convenience and on its premises are not taxable. Claimant concludes his testimony as the manager of a restaurant for 15 years was sufficient to establish the value of the meals and the Commission's determination that these should not be included was against the manifest weight of the evidence.

Section 10 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.10) defines "average weekly wage" as:

> "[T]he actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52."

Overtime, wages, bonuses and unemployment are not considered in calculating an average weekly wage, even though they may account for a significant part of many seasonal workers' annual incomes. Vacation pay, however, may be included as part of an employee's average weekly wage. (*General Tire & Rubber Co. v. Industrial Comm'n* (1991), 221 Ill. App. 3d 641, 652, 582 N.E.2d 744, 751.)

Claimant's reference to Larson does not support his position. There is nothing in the record to indicate claimant received these meals "as consideration for work." Rather, it would appear it was merely convenient for him to eat there so he could remain on duty at the restaurant rather than leave to eat elsewhere and have to put somebody else in charge. These meals appear to more closely resemble a "bonus," *i.e.*, extra benefits given to the employee by the employer.

The cases cited by claimant from other jurisdictions do establish that those courts included the value of meals in calculating the claimant's average weekly wage. In *Morgan v. Equitable General Insurance Co.* (La. App. 1980), 383 So. 2d 1067, and *Anderson v. Hammer* (1992), 252 Mont. 73, 826 P.2d 931, the evidence established that the value of the benefits was a factor which was considered in fixing the amount of the claimant's salary which constituted a real economic gain to the claimant. This was also the conclusion in *Fair-Way Restaurant v. Fair* (Fla. App. 1982), 425 So. 2d 115. In *Lewis G. Reed & Sons, Inc. v. Wimbley* (Ala. Civ. App. 1988), 533 So. 2d 628, the court merely affirmed the trial court's factual finding that there was conflicting testimony as to whether or not to include the value of these meals.

Here, claimant presented no evidence that these meals were part of his salary rather than merely being something extra or a convenience for himself and the employer. Thus, the Commission's decision not to include the value of the meals in calculating claimant's average weekly wage was not against the manifest weight of the evidence.

■ Next, claimant contends the Commission erred in not awarding payment for services rendered at the MSD Institute as a medical expense. Claimant asserts that the medical records from the MSD Institute and the testimony of Dr. Treister and Dr. Greenberg establish that his diabetes caused his impotence and the April 30, 1984, accident aggravated his latent diabetes. Claimant suggests Dr. Barnhart's opinion that there was no causal connection between the administration of the steroid and the aggravation of his diabetic condition is contrary to medical fact. Claimant notes that Dr. Barnhart did not specifically deny that he was impotent, but only stated that he had reservations about the totality of claimant's impotency.

Under the Act, an employer may only be ordered to pay for treatment which is reasonably required to cure or relieve from the effects of the accidental injury. (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(a); *Quality Wood Products Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 417, 423, 454 N.E.2d 668, 671.) An employee is only entitled

to recover those medical expenses which are reasonable and causally related to the industrial accident. (*Zarley v. Industrial Comm'n* (1981), 84 Ill. 2d 380, 389, 418 N.E.2d 717, 721.) What is reasonable and necessary is a question of fact to be determined on a case-by-case basis. *University of Illinois v. Industrial Comm'n* (1992), 232 Ill. App. 3d 154, 164, 596 N.E.2d 823, 830.

Causal connection between employment and an injury is demonstrated if a claimant establishes that the injury's origin lies in some risk related to the employment. (*Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542, 548, 578 N.E.2d 921, 923.) The claimant has the burden of establishing the necessary causal relationship between the employment and the injury. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 63, 541 N.E.2d 665, 669.) It is the function of the Commission to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences and to decide which of conflicting medical views is to be accepted. *Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 387, 454 N.E.2d 655, 657.

Conflicting medical evidence appears in the record as to whether claimant is impotent and whether this alleged impotency was caused by the aggravation of claimant's diabetes from the accidental injury or the natural progression of the diabetes. It is the Commission's function to resolve these conflicts, and our role is limited to a determination of whether the Commission's findings are against the manifest weight of the evidence. (*Granite City Steel Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 402, 406, 454 N.E.2d 1011, 1013.) The Commission's finding of no causal connection between the April 30, 1984, injury and the alleged impotency was not against the manifest weight of the evidence. Claimant did not go to MSD Institute pursuant to any physician referral, but went on the suggestion of his business partner 4½ years after the date of injury.

As the arbitrator stated, the MSD Institute records showing impotence were incomplete and no detailed report set forth the diagnosis or treatment recommendation of Dr. Berman. Nor were any of the MSD Institute doctors called to testify concerning the impotency or its cause. The Commission correctly determined the medical expense from the MSD Institute was not reasonably required to cure or relieve from the effects of the accidental injury.

■ Finally, claimant contends that since the Commission failed to include compensation for his sexual dysfunction in the PPD award, that decision was against the manifest weight of the evidence. Claimant alleges his sexual dysfunction, secondary to his diabetes, was caused by the accidental injury of April 30, 1984, and should therefore be included in the PPD award.

As we have determined, the Commission's finding of no causal connection between the accidental injury and claimant's alleged impotency was not against the manifest weight of the evidence. Thus, the Commission's finding that claimant was not entitled to compensation for any alleged sexual dysfunction was not against the manifest weight of the evidence. The PPD award sufficiently compensates claimant for his injuries sustained on April 30, 1984.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, SLATER, and RARICK, JJ., concur.