**PURAC, INC., for the Benefit of FIRE-MEN'S FUND INSURANCE COMPANY as subrogee, Plaintiff,**

v.

**TRAFPAK SERVICES, LTD., Defendant.**

**Nos. 88 C 897, 88 C 898.**

United States District Court, N.D. Illinois, E.D.

Aug. 10, 1988.

Jerome J. Duchowicz, Haskell & Perrin, Chicago, Ill., for plaintiff.

Warren J. Marwedel, Michael J. Meyer, Tribler & Marwedel, Chicago, Ill., for defendant.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff complained in Illinois state court that defendant supplied two tank containers in Rotterdam to ship lactic acid to Dolton, Illinois, that the tanks were contaminated, and that the contamination caused damages of $45,200. Plaintiff subsequently claimed that another container was contaminated as well. This rather modest

---

commercial dispute has spawned a rather impressive (and fairly argued) dispute about where the substance of the matter ought to be resolved. The forum dispute requires some exploration of the various actors and their relationships, and for that this court relies to some extent upon the representations of the parties in their memoranda.

Purac, Inc. (Purac), a United States company with offices in Illinois, has some relationship to CCA Biochem by (CCA) in Rotterdam, and it maintains a registered agent there. Trafpak Services, Ltd. (Trafpak) is incorporated in England and New Jersey and has offices in Rotterdam. CCA, on behalf of Purac, arranged with the Trafpak Rotterdam office to have three containers delivered to CCA for the shipment to Illinois. Trafpak arranged to have two of the containers cleaned by Rotterdams Tank–Transport by (RTT), a Dutch company, and one by Unidet m.v. (Unidet), a Belgian company. Trafpak billed Purac in Illinois, with payment to be made to the New Jersey office. The invoices indicated toward the bottom that "[a]ll transactions [are] subject to our Standard Trading Conditions (available upon request)." Clause 36 of the Standard Trading Conditions (one of 48 clauses in three pages of rather small print) commit the resolution of any dispute to English law and the English courts. It appears that Purac never requested a copy of the Standard Trading Conditions and was unaware of any forum selection clause. Indeed, the invoices appear to have been issued for the purpose of obtaining payment after Purac and Trafpak had made the arrangements for the shipments and they were on their way across the Atlantic.

■ Trafpak argues for dismissal on the basis of the forum selection clause. The argument is made properly but without a great deal of vigor, perhaps because litigation in England would be almost as inconvenient to Trafpak as litigation here. No one seeks to dispute that the shipment was contaminated before it reached Illinois, and the bone of contention is who was at fault in the Netherlands (and/or Belgium): CCA,

RTT, Unidet, Trafpak. Nothing happened in England. In any event, the forum selection clause was not something about which Purac negotiated or could have negotiated. It was not brought to Purac's attention directly since the only reference was to some omnibus Standard Trading Conditions. And even that reference came after the deal had been made and the goods shipped. That obscure and tardy boilerplate was not binding upon Purac respecting these transactions, even if Purac may have seen other Trafpak invoices in the past. *See Karlberg European Tanspa, Inc. v. JK–Josef Kratz,* 618 F.Supp. 344, 348 (N.D.Ill.1985).

■ Trafpak is on more solid ground in seeking dismissal based on *forum non conveniens.* Trafpak is amenable to suit in the Netherlands and, indeed, agrees to suit there. CCA and RTT are there, although Unidet may not be. None of them is amenable to suit here. Dutch law would appear to govern the relationship between Trafpak and RTT and may govern the relationship between Trafpak and Purac and Trafpak and Unidet. The witnesses and other evidence (except for evidence of the condition of the shipments upon arrival, which does not appear to be seriously disputed) are there. An affidavit of a Dutch attorney affirms that a full remedy for negligence and breach of contract is available in Dutch courts, as one would expect in view of that country's long history as a maritime and trading nation. The factors considered by the Supreme Court in *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), lead to the conclusion that these disputes should be resolved in the Netherlands, not here, and, accordingly, the motion to dismiss is granted. That dismissal is conditioned, however, upon Trafpak's consent to have the evidence originating in the United States producible and admissible pursuant to the liberal provisions of the Federal Rules of Civil Procedure and of Evidence, and to proceed expeditiously in the Netherlands. Further, this court will reinstate these cases if the bases of the dismissal do not prove to be accurate and Purac is un-

able to pursue, reasonably, a full remedy in the foreign court.