CORRUGATED METALS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Christopher Clay *et al.*, Appellees).

First District (Industrial Commission Division)   No. 1—88—1706WC

Opinion filed June 2, 1989.

Sweeney & Riman, Ltd., of Chicago, for appellant.

Sidney Z. Karasik and William H. Martay, both of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Christopher Clay, filed a claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) against respondents, Corrugated Metals, Inc. (Corrugated), and Manpower-Ready Men, Inc. (Ready-Men). The arbitrator and the Industrial Commission awarded claimant benefits and found that Ready-Men and Corrugated had entered into a risk-shifting agreement pursuant to which Ready-Men agreed to provide workers' compensation insurance for the employees which it loaned to Corrugated. The trial court reversed the decision of the Commission as to the risk-shifting agreement. Neither employer disputes the award to claimant. Corrugated appeals, contending that the trial court applied an incorrect standard of review; that the trial court erred in concluding that Ready-Men had not agreed to provide workers' compensation insurance for the loaned employee; that claimant's "work ticket" limiting the types of work in which he could engage was an invalid attempt to modify the contract;

and that if the modification was valid, the trial court's conclusion that claimant was operating a machine in violation of the contract was erroneous.

This appeal arises from the following facts. In June or July 1986, Thomas Schmitz, the midwest operations manager of Corrugated, contacted Stanley Estwin, the office manager of the Ready-Men office located in Chicago. Corrugated is in the business of processing sheet metal, and Ready-Men is in the business of providing temporary labor to employers in various types of business. Schmitz inquired about obtaining temporary help for Corrugated. Estwin quoted a fee of $5 per hour per temporary worker. Schmitz testified that during the initial conversation, he asked Estwin about insurance. Estwin replied that the $5-per-hour fee covered everything. Specifically, Estwin stated:

> "That covers everything. Covers F.I.C.A. You don't have any records, payroll records, and it also covers workmen's compensation."

Estwin did not indicate that there were any limitations on the workers' compensation insurance. Schmitz stated that he did not ask for a written agreement regarding the insurance because it did not come to his mind. Subsequently, Corrugated accepted the services of Ready-Men.

On February 16, 1987, Ready-Men sent claimant to Corrugated for work. Claimant reported to work at 7:30 a.m. He presented a Ready-Men work ticket to Corrugated and proceeded to work. The work ticket is a preprinted form which is used to direct the laborer to his daily assignment. The borrowing employer also uses it to certify the number of hours worked. The ticket contains the following language:

> "We are introducing herewith our READY-MEN INC., personnel. At the completion of the assignment would you kindly verify the hours of work performed by each individual per day and sign this certificate that the above is correct and the work has been performed in a satisfactory manner. READY-MEN, INC. employees are not to operate machinery, automotive, truck equipment or mechanical devices unless agreed to in advance."

Claimant was assigned to work at a metal-bending machine. He worked with Dan Murphy, a machine operator employed by Corrugated, and another Ready-Men temporary worker. He was assigned to help feed long sheets of metal through a machine. He also was assigned to help clean the machine. Cleaning the machine involved the use of banding equipment to scrape debris from the machine rollers while the machine was running. During the cleaning process, claimant's right-hand glove became caught in the roller and his hand was

pulled into and crushed by the machine's rollers. Murphy stopped the machine and ran the machine back to remove claimant's hand. As a result of the accident, claimant sustained severe injuries and eventually a portion of his right hand was amputated.

Schmitz testified that after the accident, he contacted the Ready-Men office. Although he did not receive any specific information regarding workers' compensation coverage, he was informed by an employee at Ready-Men that they usually would handle that type of thing. Schmitz then spoke with Estwin and informed him that he would send the information regarding what had happened. Estwin replied that he would forward the information to the main office.

Schmitz also testified that in December 1986, another Ready-Men employee had been injured while working at Corrugated. That employee was stacking equipment on a roll-former machine when he sustained an injury. Schmitz stated that Corrugated did not receive any billing for the medical treatment which the employee received, nor did it receive any notification of a workers' compensation claim with regard to that incident.

Estwin testified that after claimant's accident he spoke with Schmitz, but nothing was mentioned about insurance. Estwin admitted that the substance of Schmitz' testimony regarding their initial conversation was accurate. Estwin believed, however, that the conversation took place in June 1985 rather than June or July 1986.

On February 19, 1987, claimant sought benefits. At the hearing before the arbitrator, the parties stipulated that claimant was an employee of Ready-Men, loaned to Corrugated on February 16, 1987. The arbitrator found that claimant was entitled to benefits, and that pursuant to section 1(a)(4) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(a)(4)), Corrugated and Ready-Men were jointly and severally liable on this claim. Between themselves, however, the arbitrator found that Ready-Men had primary liability and Corrugated had secondary liability. The arbitrator further found that with regard to the Ready-Men work ticket, claimant was not operating a machine as that term ordinarily would be understood. Accordingly, the arbitrator determined that Corrugated had not breached the contract and, therefore, that Ready-Men had not been relieved of its obligation to provide claimant with workers' compensation benefits. The Commission adopted the findings of the arbitrator. Ready-Men appealed, and the trial court reversed the decision of the Commission.

Corrugated first argues that the trial court erred in concluding as a matter of law that the only inference which reasonably could be drawn from the conversation between Schmitz and Estwin was that

they had not contracted to have Ready-Men provide workers' compensation insurance for its loaned employees. Corrugated maintains that more than one inference reasonably could be made from that conversation, and that, accordingly, the issue was one of fact, and not one of law.

The trial court stated that the only reasonable inference which could be drawn from the conversation between Schmitz and Estwin was that Schmitz had inquired as to what costs were included in the $5 fee, and that Estwin had responded that it included workers' compensation. The court further stated that no reasonable inference could be drawn that the reply shifted workers' compensation liability from Corrugated to Ready-Men.

■ The existence of a contract is a question reserved for the trier of fact. (*Commonwealth Edison Co. v. Industrial Comm'n* (1988), 167 Ill. App. 3d 229, 521 N.E.2d 159.) Only if the undisputed facts permit but a single inference can the question be characterized as one of law. (*A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 412 N.E.2d 477.) We cannot say that it is not possible to draw more than one reasonable inference from the conversation between Schmitz and Estwin. Thus, we find that the trial court erred to the extent that it reviewed this issue under a "contrary to law" standard, and further find that the standard to be applied is whether the decision of the Commission is contrary to the manifest weight of the evidence. See *Granite City Steel Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 402, 454 N.E.2d 1011.

Corrugated contends that the trial court erred in concluding that Ready-Men did not agree to provide workers' compensation insurance for the employees which it loaned to Corrugated. Corrugated maintains that such agreement existed and that, pursuant to the agreement, Ready-Men was primarily liable to claimant for the benefits awarded.

■ Ready-Men and Corrugated agree that the relationship between the two companies was one of lender employer (Ready-Men) and borrowing employer (Corrugated). Section 1(a)(4) of the Act provides a statutory scheme pertaining to liability in the event an employee sustains a compensable injury while in the employ of the borrowing employer. The section states:

> "Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or

payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is *in the absence of agreement to the contrary* entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearing before the Industrial Commission or in any action to secure such reimbursement." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(a)(4).)

Thus, with respect to an injured employee, the loaning and borrowing employers are jointly liable, and as between the employers, the borrowing employer is primarily liable and the loaning employer is secondarily liable. (*Fort Dearborn Cartage Co. v. Rooks Transfer Co.* (1985), 136 Ill. App. 3d 371, 483 N.E.2d 618.) The loaning employer is required to pay only when the borrowing employer fails to do so, and then is entitled to reimbursement from the borrowing employer. (*Fort Dearborn Cartage Co. v. Rooks Transfer Co.* (1985), 136 Ill. App. 3d 371, 483 N.E.2d 618.) This right to reimbursement, however, may be waived by an agreement between the employers. *Lachona v. Industrial Comm'n* (1981), 87 Ill. 2d 208, 429 N.E.2d 858; *Albert Mojonnier, Inc. v. Industrial Comm'n* (1968), 41 Ill. 2d 128, 242 N.E.2d 184.

■ Here, the parties orally contracted for Ready-Men to supply, and Corrugated to employ, temporary workers. Ready-Men and Corrugated agree that while discussing the price element of the contract, Corrugated's manager, inquired as to insurance and was informed that the price included workers' compensation insurance. The Commission found that this conversation amounted to an agreement by Ready-Men to assume primary liability for compensable injuries sustained by its loaned employees.

Corrugated maintains that the Commission was correct, and that there was an "agreement to the contrary" within the meaning of the Act. Formation of a valid contract between two parties requires that there be mutual assent by the contracting parties on the essential terms and conditions of the subject about which they are contracting. (*Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 475 N.E.2d 1342.) Whether an oral contract exists, its terms and conditions, and intent of the parties are questions of fact (*Estate of Kern* (1986), 142 Ill. App. 3d 506, 491 N.E.2d 1275), and a reviewing court will not disturb the Commission's decision on a factual issue unless it is against the manifest weight of the evidence. *Luckenbill v. Industrial Comm'n* (1987), 155

Ill. App. 3d 106, 507 N.E.2d 1185.

■ We believe there was sufficient evidence to support the Commission's determination that an agreement to shift primary liability existed between Corrugated and Ready-Men, and thus, its decision was not contrary to the manifest weight of the evidence.

Ready-Men relies on the holdings in *Commonwealth Edison Co. v. Industrial Comm'n* and in *Evans v. Abbott Products, Inc.* (1986), 150 Ill. App. 3d 845, 502 N.E.2d 341, in support of its position that there was no agreement. Those cases, however, are distinguishable from the present case. In *Commonwealth Edison Co.*, plaintiffs alleged a purchase order containing "hold harmless" language was evidence of a contract to shift liability for workers' compensation benefits to the lending employer. The court found that it did not. The court noted that the record failed to indicate that the lending employer acknowledged or understood that the purchase order was to shift liability for workers' compensation benefits. (*Commonwealth Edison Co.*, 167 Ill. App. 3d 229, 521 N.E.2d 159.) In *Evans*, the plaintiff contended that a circular stating the lending employer would provide workers' compensation insurance for its employees established the existence of an agreement to shift the statutory payment priority. The court found that the circular was insufficient to establish such a risk-shifting agreement. The court noted that the complaint contained only a conclusory allegation regarding the existence of any such agreement. *Evans v. Abbott Products, Inc.* (1986), 150 Ill. App. 3d 845, 502 N.E.2d 341.

Here, however, Corrugated's assertions regarding the existence of a risk-shifting agreement are more than conclusory allegations. Both Estwin and Schmitz testified that there was a specific discussion regarding insurance and that Estwin specifically stated that the Ready-Men price included FICA, payroll taxes and workers' compensation insurance coverage. We believe this conversation adequately establishes that the parties arrived at an understanding regarding their respective liability. Moreover, we are unpersuaded by Ready-Men's contention that Schmitz' failure to ask for a written agreement, because "[i]t didn't come to mind," requires us to find that there was no meeting of the minds, the primary test of any contract. Rather, we believe that statement demonstrates that Schmitz saw no need to have a written contract because the borrowing employment was on a day-to-day basis.

In our judgment, the Commission's determination that a risk-shifting agreement had been entered into was not against the manifest weight of the evidence. Accordingly, we believe the trial court erred in setting aside the Commission's decision on this issue.

■ We rejected Corrugated's assertion that the work ticket pre-

sented by claimant reciting that he was not to operate machinery was an improper attempt to modify the contract between it and Ready-Men. A modification of a contract may be ratified by acquiescence in a course of conduct consistent with the existence of that modification (*cf. Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 354 N.E.2d 904), and a contract modification which has been executed will not be disturbed by the court even in the absence of consideration. *Davison v. Board of Trustees* (1985), 132 Ill. App. 3d 980, 478 N.E.2d 3.

■ In the present case, there is evidence the Corrugated ratified the modification by acquiescence. Prior to beginning work each day, claimant presented a work ticket to the person in Corrugated's office. He followed this practice on the day of his injury. Corrugated cannot now disclaim knowledge of the contents of the work ticket. Corrugated engaged in a course of conduct consistent with acceptance of the modification, and accordingly, acquiesced in the modification. See *Gateway Co. v. Charlotte Theatres, Inc.* (1st Cir. 1961), 297 F.2d 483.

Nevertheless, there is sufficient evidence to support the Commission's conclusions that Corrugated did not violate the modification by permitting claimant to assist in feeding metal into a machine and to assist in cleaning the machine. The Commission found that these actions did not amount to operation of machinery as that term ordinarily is understood.

The claimant himself testified that he did not operate the machine. He stated that he did not know how to operate the machine, and that although he was working around the machine, he never actually touched any buttons or levers. Rather, he merely fed metal into the machine and pressed a metal band against the machine rollers while a Corrugated employee actually operated and controlled the machine. Based on this testimony, we cannot say that the Commission's decision was contrary to the manifest weight of the evidence. Accordingly, we must hold that Corrugated did not breach its contract with Ready-Men and that the modification did not relieve Ready-Men of its obligation to provide workers' compensation benefits to claimant.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.