**Ernesto Gonzalez MADERO, Plaintiff,**

v.

**REFCO, INC., and Charles Dennis Scott, Defendants.**

**No. 95 C 4519.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 23, 1996.

Julia Dee Mannix, Davis, Mannix & McGrath, Chicago, IL, for Ernesto Gonzalez Madero, plaintiff.

Howard J. Roin, Edward H. Williams, Mayer, Brown & Platt, Chicago, IL, Frank L. Watson, Jr., John E. Kruger, Waring Cox, Memphis, TN, Susan J. Irion, Ameritech Corporation, Chicago, IL, for Refco, Inc., defendant.

Elizabeth Jean Caprini, McConnell & Mendelson, Chicago, IL, for Charles Dennis Scott, defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On January 19, 1996, Mr. Madero filed his amended complaint alleging that he opened a commodities account with defendant Refco in

January, 1993.[1] Defendant Scott was the broker on the account. Mr. Madero claims in his complaint that defendants violated the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* ("CEA"), and Illinois law by causing Mr. Madero's commodities account to suffer losses. Defendants filed a motion for summary judgment on the grounds that the one-year limitations period in paragraph 18 of the Customer Agreement between Refco and Mr. Madero bars Mr. Madero's lawsuit. For the reasons discussed below, defendants' motion is granted in part and denied in part.

### Whether the Contractual Limitations Period Applies to Mr. Madero's CEA Claims

 Defendants contend that the parties were able to contractually alter the two-year statute of limitations contained in the CEA. *See* 7 U.S.C. § 25(c). I disagree. The general federal policy toward limitation of actions clauses is, as stated by the Supreme Court, that

> **in the absence of a controlling statute to the contrary,** a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations....

*Taylor v. Western and Southern Life Insurance Company,* 966 F.2d 1188, 1204 (7th Cir.1992) (quoting *Order of United Commercial Travelers of America v. Wolfe,* 331 U.S. 586, 608, 67 S.Ct. 1355, 1365–66, 91 L.Ed. 1687 (1947) (emphasis added). The Seventh Circuit has forcefully suggested that because Congress provided in the CEA an express statute of limitations applicable to causes of action accruing after January 11, 1983, there is a strong public policy in favor of that particular limitations period. *Cange v. Stotler and Company, Inc.,* 826 F.2d 581, 584 (7th Cir.1987) ("*Cange I*"). Permitting the parties to contract for a shorter limitations period would, therefore, be contrary to public policy. *See id.; see also Taylor,* 966 F.2d at 1205 (stating that in *Cange I,* court held that one-year contractual limitations clause applied to CEA cause of action accruing before January 11, 1983 in light of lack of stated

policy indicating that one-year limitations period was inappropriate). Defendants do not argue that Mr. Madero's cause of action under the CEA would be barred by that statute's two-year limitations period. Accordingly, defendants are not entitled to summary judgment on Mr. Madero's CEA claims.

### Whether the Contractual Limitations Period Applies to Mr. Madero's Illinois Claims

 Defendants also contend that the parties were able to contractually alter the statute of limitations applicable to Mr. Madero's Illinois law claims. I agree. *See International Business Lists, Ltd. v. American Telephone & Telegraph Company,* 878 F.Supp. 102, 105 (N.D.Ill.1994) (applying Illinois law) ("[P]arties to a contract may agree to be bound by a shorter limitations period than that embodied in a statute of limitations, as long as the period they choose is reasonable.").

 Under Illinois law, "[w]hen a defendant raises the affirmative defense of the statute of limitations, the burden is on the plaintiff to prove that the claim has been filed within the limitations period." *Weger v. Shell Oil Company,* 966 F.2d 216, 218 (7th Cir.1992). Mr. Madero argues that the one-year contractual limitations period in paragraph 18 does not apply to his claims because he did not agree to it. Mr. Madero asserts that the faxed copy of the Customer Agreement that he signed in January, 1993 consisted of only two pages containing paragraphs 1 through 5, 25, and 26. He makes this assertion in spite of the fact that paragraph 5 ended in mid-sentence and paragraphs 6 through 24 were missing.

At any rate, it is undisputed that Mr. Madero signed another Customer Agreement in March, 1993 that contained paragraph 18. He contends, however, that defendants gave him only the signature page to sign. It is undisputed, however, that paragraph 18 was on the reverse side of the signature page. Thus when he signed the second Customer Agreement, Mr. Madero actually had the relevant clause before him because it was on the

---

1. Mr. Madero filed his original complaint on August 4, 1995.

same sheet of paper as the signature block. That Mr. Madero may have failed to read paragraph 18 before signing the Customer Agreement cannot relieve him from being bound by that paragraph. *See State Bank of Geneva v. Sorenson,* 167 Ill.App.3d 674, 118 Ill.Dec. 305, 310, 521 N.E.2d 587, 592 (2nd Dist.1988) (stating that party who has opportunity to read contract before signing, but signs before reading, is bound by contract).

■ Mr. Madero argues that even if defendants gave him a copy of the Customer Agreement at the time he signed it, but he failed to read it, he still would not be bound by the one-year limitations period. He bases this argument on his contention that the Customer Agreement was a form contract and the limitations provision was boilerplate. The three cases that Mr. Madero cites, however, do not indicate that the limitations provision would not be enforceable against him even if it were boilerplate in a form contract. The courts in two of the cases mentioned the issue of form contracts with forum selection clauses. Neither court, however, held that such a clause cannot be enforceable. *See Karlberg European Tanspa, Inc. v. JK–Josef Kratz,* 618 F.Supp. 344, 348 (N.D.Ill.1985) (noting in dicta that other courts have recognized "a qualitative difference between form contracts and freely negotiated contracts specifically tailored by the parties to address their concerns"); *G.H. Miller & Co. v. Hanes,* 566 F.Supp. 305, 308 (N.D.Ill.1983) (stating that clauses that "purport[ed] to be forum selection provisions" were boilerplate and therefore one of a number of factors to be considered in deciding a motion for a change of venue). In the third case, the court held that a party was not bound by a forum selection clause constituting "obscure and tardy boilerplate." *Purac, Inc. v. Trafpak Services,* 694 F.Supp. 476, 477 (N.D.Ill. 1988). There is no indication that the limitations clause in the Customer Agreement was either "obscure" or "tardy."

■ Mr. Madero argues that as fiduciaries, defendants owed him "a duty of good faith, loyalty, and hones[ty]" in regard to any "modifications" to the contract that he signed in March, 1993. However, defendants did not conceal that the March, 1993 Customer Agreement contained a limitations clause— Mr. Madero had the opportunity to read paragraph 18 before signing that Customer Agreement but chose not to do so.

■ Mr. Madero additionally argues that the purported addition of paragraph 18 to the second Customer Agreement that he signed constituted a contract modification. Mr. Madero maintains that because he "did not accept the contract modification and did not receive any additional consideration for such modification[,] ... the modification cannot be enforced against him." Nevertheless, "the Illinois Supreme Court has stated that a contract modification that has been executed by the parties will not be disturbed by the court, even in the absence of consideration." *Robson v. Robson,* 514 F.Supp. 99, 104 (N.D.Ill.1981), *affirmed,* 681 F.2d 820 (7th Cir.1982). *See also Corrugated Metals, Inc. v. Industrial Commission,* 184 Ill.App.3d 549, 540 N.E.2d 479, 484, 132 Ill.Dec. 739, 744 (1st Dist.1989). By signing the second Customer Agreement containing paragraph 18, Mr. Madero executed any modification embodied in that agreement.

■ Mr. Madero next argues that defendants are equitably estopped from asserting the contractual limitations period as a defense. He maintains that defendants withheld its customer agreement from him and misled him as to the transactions that took place in his account. Mr. Madero does not explain, and I cannot discern, how these actions constitute the equivalent of promises to pay a claim, such as the ones that have served as grounds for finding that the defendant induced the plaintiff to forbear suit within the applicable limitations period in the cases he cites. *See Cange I,* 826 F.2d at 587– 588; *Cange v. Stotler and Company,* 913 F.2d 1204, 1208 (7th Cir.1990) ("Cange II").[2]

---

**2.** In discussing whether the plaintiff's decision not to sue the defendant within the applicable limitations period was reasonable, the court in *Cange II,* 913 F.2d at 1208–09, noted that the plaintiff was ignorant of the limitations period because the defendant did not give the plaintiff a copy of the customer agreement. In this case, however, plaintiff had at least the portion of the agreement that included the contractual limitations period.

Mr. Madero additionally argues that the doctrine of equitable tolling permits him to avoid the effect of the one-year statute of limitations. Mr. Madero, however, fails to provide reasons justifying the application of this doctrine. He seems to imply that equitable tolling applies because defendants withheld information that he needed in order to determine if they committed any wrongdoing. Mr. Madero has failed to present any evidence demonstrating that after the limitations period began to run, *see infra*, defendants ignored his requests for documents or information. Accordingly, this argument does not advance his position.

### Whether the Contractual Limitations Period Bars Mr. Madero's Illinois Claims

Mr. Madero's causes of action under Illinois law accrued when he possessed "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct [was] involved." *Knox College v. Celotex Corporation*, 88 Ill.2d 407, 430 N.E.2d 976, 980–81, 58 Ill.Dec. 725, 729–30 (1981). It is undisputed that by the time Mr. Madero's account closed in May, 1994, the debit balance in the account was nearly $4 million. In paragraph 5 of their Local Rule 12(M) Statement, defendants assert that "[a]t a minimum, plaintiff received [the daily and monthly activity statements, which confirmed the transactions in plaintiff's account,] more than a year before he filed this suit." In paragraph 9, they state that "[o]n August 1, 1994, plaintiff's counsel wrote Refco's counsel delineating many of the claims plaintiff is pursuing in the present lawsuit ... A true and correct copy of the letter that Refco received is provided at Appendix 7." Mr. Madero controverted neither of these statements and therefore is deemed to have admitted them. LOCAL RULE 12(N). In the letter found in Appendix 7, Mr. Madero's counsel asked Refco's counsel for information regarding what appeared to be "an inordinate number of cancellations" in Mr. Madero's account from January through May of 1994. Mr. Madero's attorney also stated that he was concerned about Refco's apparent violation of the New York Cotton Exchange margin rules with respect to Mr. Madero's account; excessive commissions generated by the account; unauthorized trades; and orders that were not filled. Certainly as of August 1, 1994, therefore, Mr. Madero had enough information to put him on inquiry notice of his claims. Thus the one-year contractual limitations period began to run at that time and expired one year later, which was before plaintiff filed his original complaint on August 4, 1995. Accordingly, because Mr. Madero has not carried his burden of showing that he filed his Illinois law claims within the one-year contractual limitations period, defendants are entitled to summary judgment on those claims.

### Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted as to Mr. Madero's claims under Illinois law and denied as to Mr. Madero's claims under the CEA.